UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| INTERGLOBAL FOREST, LLC, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-240 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

## COMPLAINT

InterGlobal Forest, LLC ("IGF" or "Plaintiff"), by its undersigned attorneys, hereby brings this civil action and alleges and states as follows:

### PARTIES TO THIS ACTION

1.      IGF is a limited liability company organized under and doing business by virtue of the laws of the state of Delaware.

2.      Defendant is the United States of America, acting by and through the U.S. Department of Commerce ("Commerce") and U.S. Customs and Border Protection ("CBP").

### ADMINISTRATIVE DETERMINATIONS CONTESTED

3.      IGF contests (i) the January 28, 2022, affirmative final determination issued under 19 U.S.C. § 1517(c) by U.S. Customs and Border Protection's ("CBP") Trade Remedy & Law Enforcement Directorate ("TRLED"), which purported to find evasion (the "*Evasion Determination*"), under the Enforce and Protect Act ("EAPA") in EAPA Consolidated Case Number 7252, (ii) the June 6, 2022, decision under 19 U.S.C. § 1517(f) issued by CBP's Office of

Regulations and Rulings ("OR&R") in administrative appeal number H323923 (the "*Appeal Determination*") affirming the *Evasion Determination,* and (iii) the supplemental determination affirming the *Evasion Determination* by OR&R on July 6, 2022 in administrative appeal number H325765 (the "*Supplemental Determination*").

## JURISDICTION

4.     The U.S. Court of International Trade has jurisdiction over IGF's action pursuant to 19 U.S.C. § 1517(g)(l) and 28 U.S.C. § 1581(c).

## STANDING

5.     IGF is the U.S. importer of record of some of the merchandise subject to CBP's EAPA Consolidated Case Number 7252 ("*EAPA Consol. Case No. 7252*").  Therefore, IGF is supposedly a "person determined to have entered covered merchandise through evasion" and therefore has standing to bring this action in accordance with 19 U.S.C. § 1517(g)(1).  IGF was adversely affected and aggrieved by TRLED's affirmative evasion determination under 19 U.S.C. § 1517(c) and OR&R's affirmation of TRLED's determination under 19 U.S.C. § 1517(f), which are agency actions within the meaning of 5 U.S.C. § 702.  Therefore, IGF possesses standing to bring this action under 28 U.S.C. § 2631(i) and 5 U.S.C. § 702.

## TIMELINESS OF THIS ACTION

6.      On June 6, 2022, OR&R issued its *Appeal Determination* and then supplemented it by filing the *Supplemental Determination* as to IGF on July 6, 2022.  Accordingly, IGF timely initiated this action within the time specified by 19 U.S.C. § 1517(g)(l) *(i.e.,* not later than thirty (30) business days after CBP completes an administrative review under 19 U.S.C. § 1517(f)).

/ / /

/ / /

/ / /

## STATEMENT OF FACTS

7.      Commerce published its antidumping and countervailing duty orders on hardwood plywood from China on January 4, 2018: *Certain Hardwood Plywood from the People's Republic of China: Antidumping Order*, 83 Fed. Reg 504 (Dept. Commerce, January 4, 2018); and *Certain Hardwood Plywood from the People's Republic of China: Countervailing Duty Order*, 83 Fed. Reg. 513 (Dept. Commerce, January 4, 2018) (collectively, the "Orders").

8.      During the period of investigation set forth in Paragraph 21 below, IGF entered approximately forty-six (46) shipments of hardwood plywood purchased from and manufactured by Vietnam Finewood Company Limited ("Finewood"), a Vietnam-based manufacturer of hardwood plywood.

9.      On July 9, 2018, Plywood Source, LLC (the "Alleger") filed a petition with CBP pursuant to 19 U.S.C. § 1517 and 19 C.F.R. § 165.11, alleging that IGF and four other importers, Far East American, Inc., ("FEA''), Liberty Woods International, Inc., ("Liberty''), Ciel Group, Inc., ("Ciel"), and American Pacific Plywood, Inc. ("APPI") [originally identified incorrectly in the petition as Cosco Star International Co., Ltd.] (collectively, the "Importers") were reportedly evading the Orders by (a) importing from Finewood Chinese-origin hardwood plywood subject to the Orders, (b) falsely declaring them to be of Vietnamese-origin and (c) failing to deposit antidumping duties and countervailing duties.

10.     To this day, IGF has never been provided with a copy of the Alleger's original petition.

11.     CBP acknowledged receipt of the Alleger's filed allegation on July 25, 2018.

12.     On August 15, 2018, TRLED initiated separate EAPA investigations against the Importers (EAPA investigations 7252, 7253, 7254, 7255, and 7256), unilaterally finding that the

Alleger's allegations reasonably suggested that each of the Importers had entered Chinese-origin hardwood plywood into the United States through evasion and had made materially false statements, acts, or material omissions relating to those entries that resulted in the failure of the Importers to make cash deposits of applicable antidumping or countervailing duties. CBP consolidated those investigations pursuant to 19 C.F.R. § 165.13(a) and (b) as *EAPA Case No. 7252.*

13.     For more than three months, IGF was not even made aware that CBP had initiated *EAPA Case No. 7252.* IGF did not learn of the investigation until November 20, 2018. IGF was not allowed at any point during the investigation to see the Alleger's supposed evidence, defend against the Alleger's allegations, or otherwise participate in the investigation on its behalf.

14.     On October 24, 2018, officers from CBP and from U.S. Immigration and Customs Enforcement ("ICE") Homeland Security Investigations (HSI) (a) visited Finewood's plant in Vietnam without prior notice and (b) further scheduled an appointment to observe Finewood's production operation on the following day. *See*, CBP Interoffice Memorandum dated October 29, 2018 (the "*Attaché Report*").

15.     On October 25, 2018, officers from CBP and ICE returned to Finewood's plant. As memorialized in the *Attaché Report,* the officers toured the facility and made visual observations, but did not review purchase, sales, or production records because of alleged time constraints. The *Attaché Report* noted that Finewood personnel interviewed by CBP and ICE did not speak English and that some did not speak Vietnamese. Instead of providing unbiased professional translators, the interviews continued using CBP personnel to translate English into Vietnamese, which then required Finewood personnel to translate Vietnamese into Chinese where necessary.

16.     At no time during the visit did the visiting team notify Finewood that the visit was in relation to an EAPA investigation.  Neither did the visiting team notify Finewood of the nature or substance of the allegations against Finewood or of the potential impact or consequences of the EAPA law and regulations.  Moreover, to this day, IGF has never been provided an unredacted copy of the *Attaché Report* or a public summary of the redacted portions of the *Attaché Report* upon which CBP and ICE relied.

17.     On November 13, 2018, pursuant to 19 U.S.C. § 1517(e) and 19 CFR § 165.24 and with no prior notice at that time to IGF, the other Importers, or Finewood, CBP issued an interim decision based on an alleged reasonable suspicion of transshipment and evasion of the Orders. *See*, CBP TRLED, Notice of Initiation of Investigation and Interim Measures (Nov. 20, 2018) (the "Interim Measures Notice").  CBP imposed interim measures against all five targeted U.S. Importers (including IGF) directing that all unliquidated entries of imported merchandise under this investigation that entered the United States as not subject to AD CVD duties were to be rate-adjusted to reflect that they are subject to the AD/CVD orders on hardwood plywood from China and requiring cash deposits in excess of 200% ad valorem. *See,* 19 CFR § 165.24(b)(1)(i) and (ii).

18.     Additionally, CBP required that IGF and the other Importers make "live entry" for all future imports, meaning that IGF and the other Importers must provide all entry documents and duties before CBP releases the cargo (*i.e.*, plywood made in Vietnam by Finewood) into U.S. commerce.  CBP stated that, among other remedies, it extended the period for liquidation for all unliquidated entries that entered before the date of initiation, August 15, 2018 (*i.e.*, approximately one year before the date of initiation, to August 15, 2017). *See,* 19 CFR § 165.24(b)(1)(i) and (ii); Interim Measures Notice at 6.

19.     On November 20, 2018, IGF and the other Importers received from CBP a notice of initiation (the *"Notice of Initiation"*) pursuant to 19 C.F.R. § 165.15(d)(l), informing them for the first time that they were under EAPA investigations for the alleged evasion of the Orders. This letter also consolidated the five cases into *EAPA Consol. Case No. 7252.* IGF was not provided confidential versions of the Notice or associated documents at any time in the proceeding.

20.     The *Notice of Initiation* defined August 15, 2018, as the date that CBP initiated this EAPA investigation against IGF and the other Importers.

21.     The *Notice of Initiation* defined the period of investigation per 19 C.F.R. § 165.2 as running from July 25, 2017, through the pendency of the investigation; therefore, the Importers' entries of hardwood plywood from Finewood that entered the United States for consumption or withdrawn for consumption during this period were covered by the investigations.

22.     The *Notice of Initiation* documented that CBP relied on two videos provided by the Alleger as support for its decision. Alleger asserted that that the videos suggested that IGF and the other Importers were engaged in evasion. One video was characterized in the *Notice of Initiation* as showing workers offloading crates "*purported* to be plywood from China" [Italics added.] The other video was described in the *Notice of Initiation* as depicting a container of pre-packaged, but unidentified product "*purported* to be plywood from China." [Italics added.]

23.     These videos were later found by CBP at page 20 of its *Appeal Determination* to not "provide any relevant evidence of transshipment or evidence of Finewood's product capacity, or lack thereof. . . ." In that document, CBP stated that the videos lacked audio, were of poor quality and could not establish that the videos were of merchandise covered by the *Orders.*

24.     The *Notice of Initiation* memorializes that CBP relied on spreadsheets furnished by the Alleger purporting to be "Official Vietnamese Customs Data" as another basis for its

decision to initiate *EAPA Consol. Case No. 7252.* This collection of spreadsheets purporting to show shipments of hardwood plywood from Finewood to IGF and the other Importers in 2018 are annotated with the Alleger's request for confidentiality *(i.e.,* anonymity) of their source.

25.    CBP admitted at footnote 15 of the *Evasion Determination* that, rather than independently confirm the veracity of this data by interviewing its source, CBP merely accepted the Alleger's representation that the data was valid at face value.

26.    The *Notice of Initiation* also constituted notice to the Importers of the imposition by CBP of "interim measures" under 19 C.F.R. § 165.24(a). These measures included (i) suspending liquidation of IGF and the other Importers' entries of hardwood plywood from Vietnam entered on or after August 15, 2018; (ii) rate-adjusting all unliquidated entries under the investigation that had been entered as not subject to the *Orders* to reflect that they were subject to the *Orders* and requiring cash deposits; (iii) requiring "live entry" on all future imports from the Importers; (iv) extending the liquidation period for all unliquidated entries entered before August 15, 2018; and (v) evaluating the Importers' continuous bonds and requiring single transaction bonds as appropriate.

27.    At no point has IGF been provided an unredacted copy of the *Notice of Initiation* or a public summary of the redacted portions of that document.

28.    After the *Notice of Initiation* was issued, TRLED issued requests for information ("RFI") in the form of questionnaires and supplemental questionnaires to the Importers and to Finewood. The Importers and Finewood responded to these RFIs by providing TRLED with documents concerning the transactions between the Importers and Finewood.

29.    For its part, IGF produced Finewood's production records for each shipment of hardwood plywood which IGF imported during the period of investigation (specifically including,

but not limited to, documents relating to the requisition of materials by Finewood, receipts for materials used in production, delivery of core platforms and front/back birch veneers for final production, and stock out records for core platforms and front/back veneers used by Finewood in production).  IGF further documented Finewood's raw material purchases for its production of hardwood plywood.  It produced material invoices and payment records evidencing Finewood's purchases of core platforms, veneers of various wood species, and poplar two-ply cores and birch veneers used in the production of IGF's orders. IGF also produced, among other relevant documents and records, California Air Resources Board ("CARB") certificates for each of IGF's purchases and resulting shipments.

30.    On March 16, 2019, and March 17, 2019, members of CBP and its Regulatory Audit and Agency Advisory Services ("RAAAS") conducted an on-site visit at Finewood's factory to verify Finewood's and the Importers' voluminous responses to CBP's requests for information.  Unlike previous visits, this visit was planned and coordinated with Finewood's counsel and CBP provided an agenda.  Finewood's legal counsel was present at this CBP verification.  The CBP officers closely observed the entire production process from veneer to finished plywood.  They also inspected and verified the two-ply veneer that was the foundational evidence underlying the Alleger's allegation that Chinese "plywood" was being transshipped by Finewood.  *See*, U.S. Customs and Border Protection Office of Trade On-Site Verification Report EAPA Cons. Case No. 7252 (July 24, 2019) (the "*Verification Report*").  CBP's verification team confirmed that Finewood imported two-ply from China (not finished plywood contrary to the allegation which begat the original investigation) for further manufacturing into plywood that Finewood exported to the United States.  *Id.* at 7. The team also found no discrepancies in original production and sales documents to those which Finewood had provided in response to CBP's questionnaires.  *Id.* at 9.

31.    During the visit, Finewood explained to CBP and RAAAS that it outsourced some of its core production to other companies in Vietnam (the "tollers"), and that it provided the

tollers with core veneers and core platforms, including Chinese origin two-ply core platforms, as inputs for their use in producing finished cores.

32.      In turn, the finished cores were returned from the tollers to Finewood, where face and back veneers (typically of birch) and various protective coatings were then applied to create finished hardwood plywood.

33.      The use of tollers allowed Finewood to increase its production of finished plywood.

34.      Not all the hardwood plywood produced by Finewood and purchased by IGF contained Chinese two-ply.

35.      At no time has IGF been provided an unredacted copy of the *Verification Report* or a public summary of the redacted portions of it.

36.      CBP must issue a determination of evasion under the EAPA no later than three hundred (300) calendar days after the date the investigation was initiated.

37.      A determination of evasion must be communicated to the party that filed the EAPA allegation that led to the initiation of investigation within five (5) business days of that determination.

38.      The information gleaned by CBP during its EAPA investigation that resulted in a determination of evasion may be communicated to importers subject to that EAPA investigation within five (5) business days of that determination.

39.      CBP may extend the three hundred (300) day deadline for issuing its determination of evasion under the EAPA by no more than sixty (60) calendar days if CBP determines that the investigation is extraordinarily complicated because of the number and complexity of the transaction to be investigated, the novelty of the issues presented or the number

of entities being investigated, and the additional time is necessary to make a determination of evasion.

40.     On January 30, 2019, CBP informed IGF, the Importers, and all other parties to any ongoing EAPA case that it was uniformly tolling all deadlines in all EAPA cases by thirty-seven (37) days because of a government shutdown.

41.     On July 18, 2019, CBP informed IGF that pursuant to 19 U.S.C. § 1517(c)(l)(B) and 19 C.F.R. § 165.22(c) it was extending by sixty (60) days its period to issue its final determination of evasion.  *See*, *Notice of Extension of Final Determination* (July 18, 2019) (the *"Extension Notice"*).

42.     After taking into consideration the thirty-seven (37) days where all deadlines were tolled and the sixty (60) day extension, September 18, 2019 was the 300th calendar day after *EAPA Consol. Case No. 7252* had been initiated. *See, Extension Notice.* Thus, September 25, 2019, was the fifth (5th) business day after the 300th calendar day after *EAPA Consol. Case No. 7252* was initiated.

43.     CBP did not issue a final determination of evasion in *EAPA Consol. Case No. 7252* on or prior to September 18, 2019.

44.     Upon information and belief, a determination of evasion in *EAPA Consol. Case No. 7252* was not communicated to the Alleger on or prior to September 25, 2019.

45.     Neither the determination of evasion in *EAPA Consol. Case No. 7252* nor information discovered by CBP during that EAPA investigation was communicated to IGF on or prior to September 25, 2019.

46.     Instead, on September 25, 2019, CBP informed the Importers and the Alleger by email that it was unable to determine whether certain merchandise shipped from Finewood to the

Importers was within the scope of the *Orders.* Thus, CBP gave notice to IGF and the other Importers that CBP had referred the scope issue to Commerce for a scope determination.  CBP also announced that this referral stayed CBP's already lapsed deadline to issue a determination of evasion until Commerce determined the applicability of the *Orders* to the merchandise under review.

47.     Upon information and belief, CBP had transmitted its covered merchandise referral to Commerce on September 16, 2019.

48.     On December 27, 2019, IGF, Finewood, and FEA instituted an action in the Court of International Trade ("CIT") pursuant to 28 U.S.C. § 1581(i)(1)(B) and (D), in which Liberty intervened as a plaintiff-intervenor, claiming (a) CBP failed to conclude its EAPA Investigation within the statutory time frame provided for in 19 U.S.C. §§ 1517(c)(1)(A) & (B), and (b) CBP's scope referral to Commerce was untimely. *See*, *Vietnam Finewood Company Limited, et al. v. United States*, Court No. 19- 00218 ("Finewood I"), ECF Doc. 5.

49.     On January 13, 2020, Commerce initiated its scope determination on the issue of whether Chinese-origin two-ply panels, and hardwood plywood manufactured using Chinese two-ply panels, were within the scope of the *Orders.*

50.     On  March 11, 2020,  March 19, 2020,  and  April 3, 2020,  Commerce  sent instructions to CBP to liquidate entries of Finewood's merchandise "at the cash deposit rate required at the time of entry" (which IGF is informed and believes was 206%). Commerce's instructions violated 19 CFR § 351.225(l)(1)(2020) which requires that Commerce continue suspension of liquidation of entries that are already subject to suspension of liquidation during a pending scope inquiry.

51.     On or about March 20, 2020, CBP unlawfully began liquidating IGF's entries of Finewood's merchandise (assessing AD and CVD duties of 206%) *even though the cash deposit rate required at the time of entry was 0.00%* and notwithstanding that the ongoing scope review of the *Orders* or the existing interim measures set out in the *Notice of Initiation* required suspension of liquidation pursuant to 19 U.S.C. § 1517(c) and 19 C.F.R. § 165.24 of all unliquidated entries involved in *EAPA Consol. Case No. 7252*.  More specifically, CBP liquidated thirty-nine (39) entries on March 20, 2020, and liquidated seven (7) other entries on March 27, 2020. One of the entries, BTP-0004443-3, was liquidated on March 27, 2020 before being "re-reliquidated" again on April 3, 2020.

52.     On or about April 17, 2020, IGF alerted CBP to these premature liquidations.  CBP replied that it had received liquidation instructions from Commerce and that it was required to follow Commerce's instructions upon receipt.

53.     On or about April 23, 2020, IGF wrote to Commerce requesting that Commerce issue instructions to CBP to reverse the liquidation of entries of merchandise produced by Finewood and further suspend liquidation of these entries.  Commerce replied on May 18, 2020 that it had no legal authority to direct CBP to re-suspend liquidated entries.

54.     Thereafter, CBP began liquidating some of IGF's entries of shipments from Finewood at 206%. These entries were under investigation in *EAPA Consol. Case No. 7252.*

55.     On July 31, 2020, the above-entitled court (the "Court") issued an Opinion and Order in Finewood I which denied IGF's Motion for Leave to File a Supplemental Complaint and granting the Government's Motion to Dismiss for lack of subject-matter jurisdiction.  The Court held that IGF, FEA, and Liberty would have a remedy pursuant to 28 U.S.C. § 1581(c), that said remedy was not manifestly inadequate, and, therefore, IGF could not invoke the subsection (i)

jurisdiction.  The same day, the Court entered a judgment dismissing Finewood I, ECF Doc. Nos. 67 & 68.  *Vietnam Finewood Co. v. United States*, 466 F. Supp. 3d 1273 (Ct. Int'l Trade 2020).

56.     On August 14, 2020, IGF, Finewood, and FEA instituted an action at the CIT pursuant to 28 U.S.C. § 1581(i)(1)(B) and (D) contesting CBP's premature liquidations.  *See*, *Vietnam Finewood Company Limited, et al. v. United States*, Court No. 20-00155 ("Finewood II"), ECF Doc. Nos. 1 & 5.

57.     On August 24, 2020, IGF protested the liquidation of its entries of hardwood plywood produced by Finewood; *see*, Protest No. 460120120036.

58.     On November 3, 2020, the CIT stayed further proceedings in Ct. No. 20-00143, and on November 10, 2020, the CIT stayed further proceedings in Ct. No. 20-00155, pending CBP's final determination in EAPA Inv. 7252 or fifteen (15) days after CBP were to decide IGF's, FEA's, and Liberty's protests (if such decision were to occur prior to CBP's final EAPA determination).  CIT Ct. No. 20-00143, ECF Doc. 13 and CIT Ct. No. 20-00155, ECF Doc. No. 12.

59.     On January 21, 2022, Commerce issued its scope ruling, concluding that the further processing of Chinese origin two-ply panels in Vietnam into hardwood plywood did not substantially transform the Chinese two-ply panel, and that two-ply panels were a certain type of "veneered panel."  As a result, Commerce concluded that plywood produced by Finewood in Vietnam using Chinese two-ply panels remained Chinese origin for purposes of the *Orders*.

60.     Currently Commerce's January 21, 2022, scope ruling based on CBP's referral of *EAPA Consol. Case No. 7252* is the subject of litigation in *Vietnam Finewood Company Limited, et., al v. United States*, CIT Ct. No. 22-00049 as well as a complaint filed by IGF titled *InterGlobal Forest LLC v. United States*, CIT Ct. No. 22-00053.

13

61.     Commerce transmitted the scope ruling determination to CBP on January 27, 2022, as per its January 27, 2022 letter posted on Commerce's ACCESS public database.

62.     On January 28, 2022, CBP issued its *Evasion Determination,* concluding that IGF and the other Importers evaded the *Orders* and had done so by means prohibited by 19 U.S.C. § 1517 and 19 C.F.R. § 165. The decision was based on CBP's erroneous conclusion that substantial evidence existed demonstrating that IGF and the other Importers had imported Chinese-origin hardwood plywood subject to the *Orders.*

63.     In the *Evasion Determination,* CBP acknowledged that a portion of the hardwood plywood produced by Finewood was not within the scope of the Orders but concluded that "no feasible method on the record" existed to differentiate products subject to the Orders and products outside the scope of the Orders.

64.     In response to the RFIs, IGF and Finewood produced to CBP documentation establishing the production of the hardwood plywood Finewood sold to IGF, including documentation establishing the origin of all materials, including Chinese two-ply, used by Finewood or its tollers in the manufacture of the hardwood plywood imported by IGF.

65.     On February 25, 2022, IGF and some of the other Importers requested that CBP stay further proceedings in *EAPA Consol. Case No. 7252* until thirty (30) days after a final decision in *Vietnam Finewood Company Limited, et., al v. United States,* CIT Ct. No. 22-00049, as a final decision on the merits in that case would be controlling authority on the scope of the *Orders,* and thus has a direct impact on the outcome of *EAPA Consol. Case No. 7252.*

66.     On February 25, 2022, TRLED responded by email to IGF's and the other Importers' request for a stay in proceeding by stating that CBP had no authority under the regulations to alter the deadline for requesting administrative review pursuant to 19 U.S.C.

§ 1517(f). On March 14, 2022, IGF timely requested an administrative review of the *Evasion Determination* as provided for by 19 U.S.C. § 1517(f) and 19 CFR § 165.41. The other Importers (Liberty, FEA, and APPI) also timely filed requests for administrative review.

67. On June 6, 2022, OR&R issued its decision on the administrative appeal of the *Evasion Determination.* In the *Appeal Determination,* OR&R concluded that substantial evidence on the administrative record supported CBP and TRLED's findings that the other Importers evaded the *Orders* and imported covered merchandise within the meaning of 19 U.S.C. § 1517(a)(3) through evasion within the meaning of 19 U.S.C. § 1517(a)(5)(A).

68. OR&R, in the *Appeal Determination,* did not address the Importers' arguments relating to CBP's alleged failures to meet statutory deadlines and CBP's alleged abuses of due process and of procedural discretion during its prosecution of *EAPA Consol. Case No. 7252.* Instead, it characterized such due process failures and abuse of procedural discretion issues as beyond the agency's statutory authority of review in an EAPA case.

69. OR&R noted how its referral to Commerce for a scope ruling on whether Chinese two-ply panels and hardwood plywood made using Chinese two-ply panels were covered by the *Orders* was authorized under the EAPA. Therefore, OR&R reasoned that it lacked authority to deviate from Commerce's subsequent finding that Chinese two-ply panels and hardwood plywood made using it, was within scope of the *Orders.* In the *Appeal Determination,* OR&R recognized the ongoing litigation over whether Chinese two-ply panel was within the scope of the *Orders,* but it asserted that it could not stay *EAPA Consol. Case No. 7252* pending resolution of that litigation.

70. In evaluating whether substantial evidence on the record substantiated the findings in the *Evasion Determination,* OR&R found that the videos submitted by the Alleger to CBP

pursuant to 19 U.S.C. § 1517 and 19 C.F.R. § 165.11 as the basis for its petition were not relevant evidence of transshipment by Finewood or evidence that Finewood lacked production capacity.

71.     Pursuant to 19 U.S.C. § 1517(a)(3), "covered merchandise" under the EAPA is limited to merchandise subject to an existing antidumping or countervailing duty order.

72.     Pursuant to 19 U.S.C. § 1517 (a)(5), only covered merchandise can be subject to a determination of evasion under the EAPA.

73.     In the *Appeal Determination,* OR&R rejected the Importers' observation that TRLED failed to distinguish between (a) shipments which contained hardwood plywood made using Chinese-origin two-ply panels [and thus allegedly would be "covered merchandise" under the government's new theory that two-ply panels were, in and of themselves, "covered merchandise"], on the one hand and (b) shipments of plywood made without Chinese-origin two-ply panels (on the other hand)  as a mistaken attempt to shift the burden of proof from the Importers to CBP, therefore improperly requiring CBP to disprove evasion.

74.     OR&R erroneously concluded in its *Appeal Determination* that the record supported a finding of evasion and that IGF's and the other Importers' shipments were made by material and false statements when they were not declared as type "03" entries, subject to antidumping duty and countervailing duty.

75.     On June 6, 2022, OR&R contacted IGF and the other Importers via email to advise that due to an "inbox spam blocking malfunction," IGF's timely-filed request for administrative review of the *Evasion Determination* had not been considered by OR&R prior to it issuing its *Appeal Determination* in *EAPA Consol. Case No. 7252.* OR&R announced it would review IGF's submission and issue a supplemental *Appeal Determination* in the future.

76.     Therefore, OR&R's June 6, 2022, Final Administrative Determination related to Liberty, APPI, and FEA under the assignment of OR&R case number H323923.  Subsequently, on June 7, 2022, IGF resubmitted its March 14, 2022, request for review, which OR&R received and found compliant with the submission requirements enumerated in 19 C.F.R. § 165.41. Consequently, OR&R issued a *Supplemental Determination* addressing IGF's arguments, under OR&R case number H325765.

77.     On July 6, 2022, OR&R issued its *Supplemental Determination.*  The *Supplemental Determination* addressed IGF's arguments specifically, but affirmed the *Evasion Determination,* finding that "the record on a whole does not support IGF, APPI, FEA and Liberty's assertions that CBP should conclude that their entries were not subject to the AD/CVD Orders."

## COUNT I

78.     The allegations of the foregoing paragraphs 1 through 77, inclusive, are restated and incorporated herein by this reference as though set forth in full.

79.     A determination as to whether covered merchandise was entered through evasion must be based on substantial evidence. 19 U.S.C. § 1517(c)(l)(A); 19 C.F.R. § 165.27(a).

80.     CBP determined that the record supported a finding of evasion and that the record, taken as a whole, did not support IGF's assertions that Finewood and its tollers had the capacity to produce (and, in fact did produce) the imported hardwood plywood in Vietnam. The administrative record fails to support CBP's determination.  On the contrary, it establishes that Finewood could and did produce all the finished hardwood plywood it exported to IGF.  Moreover, contrary to those representations presently known to have been made by the Alleger in its original EAPA petition and upon which CBP commenced *EAPA Consol. Case No. 7252,* the record

17

contains no evidence, much less substantial evidence, that Finewood imported finished hardwood plywood from China and then resold it to IGF.

81.     CBP's August 15, 2018 initiation of EAPA investigations and November 13, 2018 imposition of EAPA interim measures are invalid and should be rescinded because CBP based its reasoning entirely on documents which were either found not to be probative (*i.e.*, the videos) or which were not properly placed on the administrative record.

82.     Moreover, based on the Affidavit filed by CBP in Finewood I (which accompanied the public administrative record of EAPA Investigation 7252), several of the Alleger's undated EAPA allegation supporting documents were filed after August 15, 2018.   *See*, Finewood I, Declaration of Dean N. Glory, Index for 7252 – Public Version (Feb. 25, 2020), ECF No. 36 (listing numerous Factual Information submissions filed by the Alleger between September 11, 2018 and November 1, 2018).

83.     Such filings constitute factual information voluntarily submitted to CBP to support the allegation of evasion under 19 C.F.R. § 165.23(b) within 200 calendar days after initiation. The public version of such documents must be served via an email message or through other designated methods on parties to the investigation including IGF.   *See*, 19 C.F.R. 165.23(c)(2). Despite Alleger's utter failure to comply with the service requirement, CBP abused its discretion and elected to accept the improperly filed purported "new" factual information. CBP thereby grossly violated IGF's rights by effectively precluding IGF from filing rebuttal information prior to the imposition of interim measures.

84.     Therefore, CBP's determinations in the *Evasion Determination,* the *Appeal Determination,* and the *Supplemental Determination* in *EAPA Consol. Case No. 7252* that IGF imported covered merchandise through evasion constituted an arbitrary and capricious abuse of

discretion in violation of 19 U.S.C. § 1517(g)(2) and 5 U.S.C. § 706.  They were also otherwise not in accordance with law and CBP's conclusions are unsupported by substantial evidence as required under 19 U.S.C. § 1517(c)(l)(A).

## COUNT II

85.     The allegations of paragraphs 1 through 84 are restated and incorporated herein by reference.

86.     CBP's determination that all of IGF's imports of hardwood plywood from Finewood were "covered merchandise" was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and was unsupported by substantial evidence.  The EAPA statute defined "covered merchandise" as "merchandise that is subject to" an antidumping or countervailing duty order. 19 U.S.C. § 1517(a)(3).

87.     Substantial evidence on the administrative record establishes that much of the hardwood plywood imported by IGF was produced in Vietnam without the use of Chinese two-ply panels as a production input.  The administrative record, when viewed as a whole, documents from production through entry into the United States the origin of each shipment of hardwood plywood IGF received from Finewood, and this information clearly established that a significant portion of IGF's entries were made in Vietnam without the incorporation of Chinese two-ply.

88.     Hardwood plywood manufactured in Vietnam without the incorporation of Chinese two-ply panels is entirely outside the scope of the *Orders,* so those shipments to IGF from Finewood of hardwood plywood made in Vietnam without Chinese two-ply panels are not "covered merchandise."

89.     Thus, CBP's determinations in the *Evasion Determination,* the *Appeal Determination* and the *Supplemental Determination* in *EAPA Consol. Case No. 7252* that all

shipments to IGF from Finewood of hardwood plywood made in Vietnam (even those made without employing Chinese two-ply panels) were "covered merchandise" were arbitrary and capricious, an abuse of discretion, in gross violation of 19 U.S.C. § 1517(g)(2) and 5 U.S.C. § 706, and/or otherwise not in accordance with law and unsupported by substantial evidence as required under 19 U.S.C. § 1517(c)(l)(A).

<u>**COUNT III**</u>

90.     The allegations of paragraphs 1 through 89 are restated and incorporated herein by reference.

91.     CBP's finding that IGF entered merchandise by means of "material and false" statements was arbitrary and capricious, an abuse of discretion otherwise not in accordance with law, and unsupported by substantial evidence for those shipments from Finewood to IGF of hardwood plywood made in Vietnam without Chinese two-ply panels.  The *Orders* do not cover, and did not at the time of entry of IGF's shipments cover, hardwood plywood made in Vietnam without Chinese two-ply panels.  IGF did not make false statements when it entered as type "01" entries its shipments of hardwood plywood made in Vietnam without Chinese two-ply panels or when it represented such shipments as being of Vietnamese origin.

92.     Thus, CBP's determinations in the *Evasion Determination,* the *Appeal Determination* and the *Supplemental Determination* in *EAPA Consol. Case No. 7252* that shipments to IGF from Finewood of hardwood plywood made in Vietnam without Chinese two-ply were entered by means of material and false statements were arbitrary and capricious, an abuse of discretion and in violation of 19 U.S.C. § 1517(g)(2) and 5 U.S.C. § 706, or otherwise not in accordance with law. Moreover, they are unsupported by substantial evidence as required under 19 U.S.C. § 1517(c)(l)(A).

## COUNT IV

93.     The allegations of paragraphs 1 through 92 are restated and incorporated herein by reference.

94.     Congress authorized CBP to initiate an investigation under EAPA only if CBP were to determine that information "reasonably suggests that covered merchandise has been entered into the Customs Territory of the United States through evasion." Substantial evidence on the administrative record does not support CBP's decision to initiate this investigation.

95.     The videos provided by the Alleger have already been dismissed by OR&R at page 20 of the *Appeal Determination* as not "provid[ing] any relevant evidence of transshipment or evidence of Finewood's product capacity, or lack thereof . . . " because they lacked audio, were of poor quality, did not establish where the videos were filmed or if "covered merchandise" was even depicted, showed no production activities and did not provide any connection to IGF's imported merchandise. OR&R characterized these videos in the *Appeal Determination* as constituting the "majority of the Alleger's allegations. . . ." These mortal legal defects relating to the videos existed at the time CBP elected to initiate this investigation.

96.     Furthermore, CBP did not independently verify the veracity of the spreadsheets submitted by the Alleger with its EAPA petition, which purported to contain "Official Vietnamese Customs Data," The Alleger is a business competitor of IGF and the other Importers, and represented to CBP that its source for this information wished to remain anonymous. Instead of testing the data and verifying its authenticity and accuracy, CBP unqualifiedly accepted at face value the Alleger's representation that the purported "Vietnamese Customs data" was accurate.

97.     Consequently, CBP had no credible, unbiased, and independently verified information that reasonably suggested that IGF was evading the *Orders.* As such, CBP's

determination to initiate an EAPA investigation against IGF was unsupported by reasonable evidence in violation of 19 U.S.C. § 1517(b)(l) or was otherwise not in accordance with law and unsupported by substantial evidence as required under 19 U.S.C. § 1517(c)(l)(A) and should be voided *ab initio.*

## COUNT V

**98.**     The allegations of paragraphs 1 through 97 are restated and incorporated herein by reference.

**99.**     CBP failed to comply fully with all procedures and safeguards under the EAPA statute set forth for completing an EAPA investigation and issuing a defensible determination of evasion.  In violation of 19 U.S.C. § 1517(c)(l)(A), CBP failed to conclude its investigation and publish its decision of evasion against IGF "not later than 300 calendar days" after CBP had initiated the EAPA investigation even after including 37 days for tolling and 60 days for CBP's extension.

**100.**     Furthermore, in violation of 19 U.S.C. § 1517(c)(4), CBP failed to communicate its determination of invasion to IGF or to the Alleger within five business days following the 300th day after CBP had initiated the investigation (even after factoring in the tolling and the extension). The EAPA statute requires CBP to fully comply with "all procedures under subsections (c) and (f). . . ." *See,* 19 U.S.C. § 1517(g)(2)(A).

**101.**     Under the EAPA, CBP may impose interim measures, such as those imposed against IGF, based on the lower threshold of "reasonable suspicion." 19 U.S.C. § 1517(e). Nevertheless, the EAPA statute still contemplates a final decision within the 300-day period set out in 19 U.S.C. § 1517(c)(l)(A).  After that time, a decision to continue remedial measures against

the importer must be based on the higher standard which requires "substantial evidence."  19

U.S.C. § 1517(c)(l)(A) and 19 C.F.R. § 165.27(a).

 **102.** As enacted, the EAPA statute is designed to protect against open-ended interim

measures being imposed on EAPA respondents based merely on a "reasonable suspicion"

standard. Instead, it mandates that that CBP must comply fully and promptly with "all the

procedures under subsections (c) and (f). . . ."  Among other things, CBP must complete its

determination within the statutory time limits set out in those subsections and determine whether

"substantial evidence" supports or controverts a determination of evasion.  If substantial evidence

does not support a finding of evasion, the punitive interim measures which are imposed merely

upon "reasonable suspicion" are discontinued.

 **103.** CBP's delay in making its *Evasion Determination* in a timely manner as required

by 19 U.S.C. § 1517(c)(l)(A) caused substantial prejudice to IGF via the continuation of the

interim measures beyond CBP's statutory deadline for CBP making its final evasion decision based

on substantial evidence, not reasonable suspicion. It was also during this extended period when

CBP unlawfully liquidated most of IGF's entries that were the subject of *EAPA Consol. Case No.*

*7252.*

 **104.** Such unlawful liquidations rate-advanced IGF's entries to the 206% rate for

merchandise covered by the *Orders* notwithstanding that IGF's imported hardwood plywood had

yet to be determined to constitute "covered merchandise" under the EAPA. The EAPA statute as

drafted is designed to avoid such prejudice by requiring timely and transparent adjudication of an

EAPA case.

 **105.** Therefore, CBP's determinations in the *Evasion Determination,* the *Appeal*

*Determination,* and the *Supplemental Determination* in *EAPA Consol. Case No. 7252* violate the

statutory protections and purpose of 19 U.S.C. § 1517. Moreover, they were arbitrary and capricious, constitute an abuse of discretion, and violate 19 U.S.C. § 1517(g)(2) and 5 U.S.C. § 706, are otherwise not in accordance with law, and are unsupported by substantial evidence where CBP failed to follow the EAPA statute and regulations.

## COUNT VI

**106.**    The allegations of paragraphs 1 through 105 are restated and incorporated herein by reference.

**107.**    CBP violated IGF's due process rights by not making available to IGF or its legal counsel complete, unredacted copies of transcripts, exhibits, and documents filed in *EAPA Consol. Case No. 7252* and upon which CBP's decisions were made. CBP should have established a protective order to allow counsel for IGF and the other parties access to the information CBP had gathered in its EAPA investigation to allow them to prepare the defense of their clients in *EAPA Consol. Case No. 7252.* Furthermore, CBP failed to provide IGF unredacted versions or public summaries of the redacted portions of the *Attaché Report, Notice of Initiation,* or the *Verification Report* as required by 19 C.F.R. § 165.4.

**108.**    For the reasons set forth above, CBP's determinations in the *Evasion Determination,* the *Appeal Determination,* and the *Supplemental Determination* in *EAPA Consol. Case No. 7252* violated the Due Process Clause of the Fifth Amendment of the U.S. Constitution and were otherwise not in accordance with law by failing to provide IGF adequate due process and opportunity to be heard in *EAPA Consol. Case No. 7252.*

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, IGF respectfully requests that this Court enter judgment as follows:

**(a)**    Enter judgment in favor of IGF;

**(b)**      Sustain Counts I through VI of IGF's complaint;

**(c)**      Remand this matter to U.S. Customs and Border Protection with instructions to terminate this investigation and order the liquidation of IGF's unliquidated entries without the addition of antidumping and countervailing duties and to grant in full IGF's administrative Protest No. 460120120036 contesting CBP's unlawful premature liquidation of IGF's entries;

**(d)**      Award IGF a judgment for costs, including reasonable attorneys' fees, in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412; and

**(e)**      Grant IGF such other relief as the court may deem just and proper.


Dated: August 17, 2022                    Respectfully submitted,

                                          /s/ Ignacio J. Lazo_____

                                          Ignacio J. Lazo
                                          Cadden & Fuller LLP
                                          2050 Main Street, Suite 260
                                          Irvine, CA 92614
                                          Telephone: (949) 788-0827
                                          Facsimile: (949) 450-6550
                                          E-mail:ilazo@caddenfuller.com