UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| INTERGLOBAL FOREST, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>    Defendant. | Court No. 22-00240 |

## **ORDER**

On consideration of the application for fees pursuant to the Equal Access to Justice Act filed by plaintiff Interglobal Forest, LLC, defendant's opposition thereto, and all other pertinent papers, it is hereby

ORDERED that plaintiff's application is denied.


Dated: _____
      New York, NY

_____
CHIEF JUDGE

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| INTERGLOBAL FOREST, LLC, ) | |
| ) | |
| Plaintiff, ) | Court No. 22-00240 |
| ) | |
| v. ) | **Public Version** |
| ) | **Proprietary Information** |
| UNITED STATES, ) | **Removed From** |
| ) | **Pages 10, 27, 32, 35-42** |
| Defendant. ) | |
| ) | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S APPLICATION FOR ATTORNEY FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:
JENNIFER L. PETELLE
Attorney
U.S. Customs and Border Protection
 Office of the Chief Counsel

ELIZABETH A. SPECK
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington D.C. 20044
Tel: (202) 307-0369
Email: elizabeth.speck@usdoj.gov

September 10, 2024

Attorneys for Defendant

## **TABLE OF CONTENTS**

**PAGE**

QUESTIONS PRESENTED .................................................................................................. 2

BACKGROUND .............................................................................................................. 3

    I.      The Law Governing Customs And Border Protection's EAPA Determination ...... 3

    II.    CBP's Determination That IGF Had Violated EAPA ............................................. 5

    III.   Litigation Regarding Commerce's Scope Determination ...................................... 6

    IV.   IGF's Challenge To CBP's EAPA Final Determination.......................................... 7

         A.     IGF's Complaint.......................................................................................... 7

         B.     Proceedings Before This Court.................................................................... 7

SUMMARY OF THE ARGUMENT ................................................................................ 10

ARGUMENT .................................................................................................................. 12

    I.      Legal Standard ...................................................................................................... 12

    II.    IGF's EAJA Application Should Be Denied.......................................................... 14

         A.     IGF Is Not A Prevailing Party.................................................................... 14

         B.     The Government's Position Was Substantially Justified .......................... 17

              1.     CBP's Position Was Substantially Justified ................................... 17

              2.     The Government's Litigation Position Was Substantially Justified And IGF Concedes As Much........................................... 21

              3.     IGF's Other Arguments Regarding Alleged "Bad Acts" Lack Merit................................................................................................. 23

         C.     The Special Circumstances Presented By This Case Make An Award Unjust....................................................................................................... 25

    III.   Even If IGF Were Entitled To An EAJA Award, Its Requested Attorney Fees Are Contrary To Law And Otherwise Unreasonable.................................................... 26

         A.     IGF Is Not Entitled To Collect Fees And Costs For Its Proceedings Before CBP................................................................................................ 27

         B.     IGF Fails To Establish That It Is Entitled To A Special-Factor Enhancement............................................................................................. 28

C.    IGF Has Failed to Establish That It Is Entitled To Its Requested Rate For
       Paralegal Fees ........................................................................................... 32

D.    IGF Impermissibly Seeks Compensation For Litigating Unsuccessful
       Claims ....................................................................................................... 33

E.    IGF's Fee Request Is Otherwise Unreasonable ....................................... 35

       1.    IGF Seeks Excessive Fees ............................................................. 35

       2.    IGF Seeks Fees For Irrelevant Time Entries................................. 40

       3.    IGF Seeks Fees For Vague And Redundant Time Entries ............ 41

CONCLUSION................................................................................................................ 42

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

### <u>CASES</u>

*All One God Faith, Inc. v. United States*,
 589 F. Supp.3d 1238 (Ct. Int'l Trade 2022) ............................................................. 18

*Am. Air Parcel Forwarding Co.*,
 697 F. Supp. 505 (Ct. Int'l Trade 1998) .................................................................. 26

*American Pacific Plywood & LB Wood Cambodia, Ltd.*,
 No. 20-3914, 2023 WL 4288346 n.10 (Ct. Int'l Trade June 22, 2023) ............................ 20, 25

*Ardestani v. INS*,
 502 U.S. 129 (1991) ............................................................................................ 27

*Blum v. Stenson*,
 465 U.S. 886 (1984) ............................................................................................ 32

*Bryant v. Comm'r of Soc. Sec.*,
 578 F.3d 443 (6th Cir. 2009) ................................................................................. 32

*Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*,
 532 U.S. 598 (2001) ............................................................................................ 14

*CEK Group, LLC v. United States*,
 633 F. Supp. 3d 1369 (Ct. Int'l Trade 2023) ......................................................... 20, 21

*Crawford v. United States*,
 66 F.4th 1339 (Fed. Cir. 2023) .............................................................................. 16

*Croman Corp. v. United States*,
 724 F.3d 1357 (Fed. Cir. 2013) ............................................................................. 24

*Davis v. Nicholson*,
 475 F.3d 1360 (Fed. Cir. 2007) ............................................................................. 14

*Devine v. Sutermeister*,
 733 F.2d 892 (Fed. Cir. 1984) ...................................................................... 13, 25, 26

*DGR Assocs., Inc. v. United States*,
 690 F.3d 1335 (Fed. Cir. 2012) ............................................................................. 17

*Diamond Tools Tech., LLC v. United States*,
 609 F. Supp.3d 1378 (Ct. Int'l Trade 2022) ............................................................. 18

*Diamond Tools Technology, LLC v. United States*,
    686 F. Supp. 3d 1374 (Ct. Int'l Trade 2024)............................................................ 19, 21, 22

*Ellis v. United States*,
    711 F.2d 1571 (Fed. Cir. 1983) .......................................................................................... 35

*F.J. Vollmer Co. v. Magaw*,
    102 F.3d 591 (D.C. Cir. 1996) ............................................................................................ 31

*Far East American, Inc. v. United States*,
    673 F. Supp. 3d 1333 (Ct. Int'l Trade 2023) .............................................................. 8, 9, 15

*Far East American, Inc. v. United States*,
    693 F. Supp. 3d 1378 (Ct. Int'l Trade 2024) ............................................................ 10, 15, 25

*Far East American, Inc., et al., v. United States*,
    654 F. Supp. 3d 1308 (Ct. Int'l Trade 2023) ........................................................................ 7

*Farrar v. Hobby*,
    506 U.S. 103 (1992) ............................................................................................................ 33

*Former Employees of Tyco Electronics, Fiber Optics Div. v. U.S. Dep't of Labor*,
    350 F. Supp. 2d 1075 (Ct. Int'l Trade 2004) ...................................................................... 39

*Gava v. United States*,
    699 F.2d 1367 (Fed. Cir. 1983) .......................................................................................... 23

*Grupo Simec Acerero S.A. de C.V. v. United States*,
    615 F. Supp. 3d 1339 (Ct. Int'l Trade 2023) ................................................................. 23, 24

*Gurley v. Peake*,
    528 F.3d 1322 (Fed. Cir. 2008) .......................................................................................... 16

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ................................................................................................. 33, 34, 35

*Hubbard v. United States*,
    480 F.3d 1327 (Fed. Cir. 2007) .......................................................................................... 33

*I.N.S. v. Jean*,
    496 U.S. 154 (1990) ...................................................................................................... 12, 13

*Ikadan System USA, Inc. v. United States*,
    639 F. Supp. 3d 1339 (Ct. Int'l Trade 2023) ...................................................................... 19

*In re Perry*,
    882 F.2d 534 (1st Cir. 1989) ........................................................................... 28

*Inner Secrets/Secretly Yours, Inc. v. United States*,
    916 F. Supp. 1259 (Ct. Int'l Trade 1996) ...................................................... 27

*Int'l Custom Prods., Inc. v. United States*,
    77 F. Supp.3d 1319 (Ct. Int'l Trade 2015) ............................................... 29, 42

*Int'l Custom Products, Inc. v. United States*,
    843 F.3d 1355 (Fed. Cir. 2016) .................................................................. 13, 29

*Jazz Photo Corp. v. United States*,
    597 F. Supp.2d 1364 (Ct. Int'l Trade 2008) ............................................. 29, 35

*Keirton USA, Inc. v. United States*,
    627 F. Supp.3d 1342 (Ct. Int'l Trade 2023) ........................................ 17, 22, 26

*KMS Fusion, Inc. v. United States*,
    39 Fed. Cl. 593 (1997) .................................................................................... 39

*Lizarraga Customs Broker v. Bureau of Customs and Border Protection*,
    35 CIT 1439 (2011) ............................................................................ 30, 31, 32

*Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States*,
    837 F.2d 465 (Fed. Cir. 1988) .................................................................. 21, 22

*Norris v. S.E.C.*,
    695 F.3d 1261 (Fed. Cir. 2012) ................................................................ 17, 22

*Oklahoma Aerotronics v. United States*,
    943 F.2d 1344 (D.C. Cir. 1991) ..................................................................... 35

*Oliveira v. United States*,
    827 F.2d 735 (Fed. Cir. 1987) ....................................................................... 32

*Patrick v. Shinseki*,
    668 F.3d 1325 (Fed. Cir. 2011) ..................................................................... 13

*Phoenix Metal Co., Ltd. v. United States*,
    No. 23-0048, 2024 WL 2891503 (Ct. Int'l Trade June 10, 2024) .................. 25

*Pierce v. Underwood*,
    487 U.S. 552 (1988) ................................................................................. passim

*Porter v. Heckler*,
   780 F.2d 920 (11th Cir. 1986) ..................................................................... 20

*Richlin Security Service Co. v. Chertoff*,
   553 U.S. 571 (2008) ..................................................................................... 32

*Royal Brush Mfg., Inc. v. United States*,
   75 F.4th 1250 (Fed. Cir. 2023) ......................................................... 3, 8, 20

*Scarborough v. Principi*,
   541 U.S. 401 (2004) ..................................................................................... 12

*Schuenemeyer v. United States*,
   776 F.2d 329 (Fed. Cir. 1985) ..................................................................... 39

*Shah Bros. v. United States*,
   9 F. Supp.3d 1402 (Ct. Int'l Trade 2014) .................................................... 29

*Sierra Club v. Secretary of the Army*,
   820 F.2d 513 (1st Cir. 1987) ........................................................................ 20

*Starry Assocs., Inc. v. United States*,
   892 F.3d 1372 (Fed. Cir. 2018) ................................................................... 29

*Sumecht NA, Inc. v. United States*,
   437 F. Supp. 3d 1316 (Ct. Int'l Trade 2020) ............................................... 23

*Terry v. Ohio*,
   392 U.S. 1 (1968) ......................................................................................... 21

*Texas State Teachers Ass'n v. Garland Indep. Sc. Dist.*,
   489 U.S. 782 (1989) ..................................................................................... 14

*Traveler Trading Co. v. United States*,
   713 F. Supp. 409 (Ct. Int'l Trade 1989) ...................................................... 27

*Truckers United for Safety v. Mead*,
   329 F.3d 891 (D.C. Cir. 2003) ..................................................................... 30

*United Partition Sys., Inc. v. United States*,
   95 Fed. Cl. 42 (201) ............................................................................... 39, 42

*United States v. Ford Motor Co.*,
   463 F.3d 1267 (Fed. Cir. 2006) ................................................................... 32

*Vaughn v. Principi*,
  336 F.3d 1351 (Fed. Cir. 2003) ........................................................... 16

*Vietnam Finewood Co., Ltd.*,
  633 F. Supp. 3d 1243 (Ct. Int'l Trade 2023) ..................................... 6, 15

*Ward v. United States Postal Serv.*,
  672 F.3d 1294 (Fed. Cir. 2012) ....................................................... 14, 16

## <u>STATUTES</u>

5 U.S.C. § 504(b)(1)(C) ................................................................... 27, 28

5 U.S.C. § 555 ...................................................................................... 28

19 U.S.C. § 1517 ............................................................................. passim

19 U.S.C. § 1517(a)(1) ........................................................................ 15

19 U.S.C. § 1517(a)(3)(A)-(B) .............................................................. 4

19 U.S.C. § 1517(a)(5) ..................................................................... 9, 10

19 U.S.C. § 1517(a)(5)(A) ........................................................ 4, 18, 19

19 U.S.C. § 1517(b)(1) ..................................................................... 4, 20

19 U.S.C. § 1517(b)(4) ..................................................................... passim

19 U.S.C. § 1517(b)(4)(A)(i) ............................................................... 14

19 U.S.C. § 1517(b)(4)(B) .............................................................. 14, 15

19 U.S.C. § 1517(b)(4)(C) ..................................................................... 4

19 U.S.C. § 1517(c) ............................................................................... 5

19 U.S.C. § 1517(c)(1)(A) ................................................................. 3, 5

19 U.S.C. § 1517(c)(2) ......................................................................... 24

19 U.S.C. § 1517(e) ......................................................................... 4, 24

19 U.S.C. § 1517(e)(1) ........................................................................... 4

19 U.S.C. § 1517(f)(1) ........................................................................... 5

19 U.S.C. § 1517(g)(2)(A)-(B) ................................................................................ 5

19 U.S.C. § 1592 .................................................................................................. 28

19 U.S.C. § 1677(1) ............................................................................................. 15

28 U.S.C. 2412(d) ........................................................................................... 1, 14

28 U.S.C. § 2412(d)(1)(A) .......................................................................... 12, 13, 25

28 U.S.C. § 2412(d)(1)(A)(ii) ............................................................................... 28

28 U.S.C. § 2412(d)(1)(B) ................................................................................... 12

28 U.S.C. § 2412(d)(1)(C) ............................................................................. 33, 35

28 U.S.C. § 2412(d)(2)(B) ................................................................................... 12

28 U.S.C. § 2412(d)(2)(D) ................................................................................... 12

28 U.S.C. § 2412(d)(3) ........................................................................................ 27

## REGULATIONS

19 C.F.R. § 165.16 ................................................................................................ 5

19 C.F.R. § 165.41 ................................................................................................ 5

## ADMINISTRATIVE DETERMINATION

*Certain Hardwood Plywood Products from the People's Republic of China*,
    83 Fed. Reg. 504 (Dep't of Commerce Jan. 4, 2018) ................................... 5

*Certain Hardwood Plywood Products from the People's Republic of China*,
    83 Fed. Reg. 513 (Dep't of Commerce Jan. 4, 2018) ................................... 5

## OTHER DOCUMENTS

H.R. Rep. No. 96-1418, at 11, as reprinted in 1980 U.S.C.C.A.N 4984, 4990) .................... 13, 25

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| ————————————————————— ) | |
| INTERGLOBAL FOREST, LLC, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| ) | Court No. 22-00240 |
| ) | **Public Version** |
|    v. ) | **Proprietary Information Removed** |
| ) | **From Pages 10, 27, 32, 35-42** |
| UNITED STATES, ) | |
| ) | |
|    Defendant. ) | |
| ) | |
| ————————————————————— ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S APPLICATION
## FOR ATTORNEY FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT

Pursuant to Rule 54.1 of the Rules of this Court, defendant, the United States, respectfully submits this response in opposition to the application for attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (EAJA), filed by plaintiff, Interglobal Forest, LLC (IGF) (ECF No. 20) (Pl. Br.).[1] The Court should deny IGF's EAJA application.  As demonstrated below, IGF cannot be considered a "prevailing party" for purposes of receiving fees and costs under EAJA.  Further, the Government's position, at the agency level and in this litigation, was substantially justified.

Even if the Court determines that the Government's position is not substantially justified, however, EAJA's provision governing "special circumstances" would render such an attorney-fee award unjust because the interpretation of the statutory provision at issue — the evasion

---

[1]  IGF's motion for judgment on the administrative record, filed on January 13, 2023, ECF No. 44, is referenced as "IGF MJAR," and IGF's Complaint, in *InterGlobal Forest, LLC v. United States*, No. 22-240, Aug. 17, 2022, ECF No. 2, is referenced as "Compl."

provision of the Enforce and Protect Act of 2015 (EAPA), 19 U.S.C. § 1517 — and CBP's

reliance on the Department of Commerce's (Commerce) scope ruling presents a novel issue in an

area in which the law is unsettled.

Finally, in the event that the Court concludes that IGF is entitled to attorney fees, IGF's

requested award is contrary to law and unreasonable for the following reasons: (1) IGF

impermissibly seeks fees for the agency proceedings before CBP; (2) IGF failed to establish that

it is entitled to enhanced EAJA fees based on a "special factor"; (3) IGF has failed to establish

that it is entitled to a higher rate for its requested paralegal fees; and (4) IGF impermissibly seeks

fees for unsuccessful claims; and (5) IGF impermissibly seeks attorney fees for excessive,

irrelevant, vague, and duplicative time entries.

## QUESTIONS PRESENTED

1.      Whether IGF is a prevailing party for purposes of EAJA when IGF opposed

CBP's motion for a voluntary remand in the instant litigation and CBP's reversal of its finding of

evasion was based upon the outcome of an entirely separate litigation involving a scope

determination by Commerce.

2.      Whether the Government's position was substantially justified when it involved

an issue for which the law is novel and not settled.

3.      Whether IGF is entitled to fees for the administrative enforcement proceeding

before CBP where CBP relied on the scope determination of Commerce.

4.      In the event that the Court concludes that the Government's position was not

substantially justified, whether this case presents "special circumstances" that would render an

award of attorney fees unjust.

5.      In the event that the Court concludes that the Government's position was not substantially justified and that no special circumstances exist, whether IGF is entitled to its actual hourly fees under EAJA's "special factor."

6.      In the event that the Court concludes that the Government's position was not substantially justified and that no special circumstances exist, whether IGF is entitled to its requested rate for paralegal services.

7.      In the event that the Court concludes that the Government's position was not substantially justified and that no special circumstances exist, whether IGF's fees should be reduced for issues that they litigated unsuccessfully or that unnecessarily prolonged the litigation.

8.      In the event that the Court concludes that IGF is entitled to attorney fees under EAJA, whether IGF's requested fees should be reduced because they were contrary to law and are otherwise unreasonable.

## **BACKGROUND**

### I.      **The Law Governing Customs And Border Protection's EAPA Determination**

At issue in this case is a final determination under EAPA, which authorizes U.S. Customs and Border Protection (CBP) to investigate allegations of evasion of antidumping (AD) and countervailing (CVD) duty orders.  19 U.S.C. § 1517.  "Congress, concerned with evasion of antidumping duties, on February 24, 2016, enacted the EAPA, a statutory scheme for determining whether 'covered merchandise was entered into the customs territory of the United States through evasion.'"  _Royal Brush Mfg., Inc. v. United States_, 75 F.4th 1250, 1255 (Fed. Cir. 2023) (quoting 19 U.S.C. § 1517(c)(1)(A)).  EAPA thus established a new CBP administrative

procedure for investigating allegations of evasion as part of the United States' efforts to ensure a level playing field for domestic industries.

Upon receiving an allegation, the statute mandates a formal investigation process, and CBP's regulations established additional procedures. CBP's Trade Remedy Law Enforcement Directorate (TRLED) must initiate an investigation within 15 days of receiving an allegation that "reasonably suggests that covered merchandise has been entered into the customs territory of the United States through evasion." 19 U.S.C. § 1517(b)(1). EAPA defines "evasion" as:

> {E}ntering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

*Id.* § 1517(a)(5)(A). The statute defines "covered merchandise" as merchandise that is subject to an AD or CVD order. 19 U.S.C. § 1517(a)(3)(A)-(B). If, at any point after receipt of an allegation, CBP is unable to determine whether merchandise is "covered merchandise," it shall refer the matter to Commerce to make a scope determination. 19 U.S.C. § 1517(b)(4). When the matter is referred to Commerce, the EAPA statutory deadlines are stayed. *Id.* § (b)(4)(C).

The statute provides that, "{n}ot later than 90 calendar days after initiating an investigation . . . {TRLED} shall decide based on the investigation if there is a reasonable suspicion that such covered merchandise was entered into the customs territory of the United States through evasion{.}" *Id.* § 1517(e). If there is such reasonable suspicion, TRLED is required to impose interim measures, including "suspend{ing} the liquidation of each unliquidated entry of such covered merchandise that entered on or after the date of the initiation of the investigation{.}" *Id.* § 1517(e)(1)

EAPA directs TRLED to make its final determination, "based on substantial evidence," within 300 calendar days after the initiation of the investigation. *Id.* § 1517(c)(1)(A). The statute provides for *de novo* review of CBP's final determination from CBP's Office of Regulations & Rulings (ORR), *id.* § 1517(f)(1); 19 C.F.R. § 165.41, and judicial review in this Court. *Id.* § 1517(g)(2)(A)-(B).

## II.  CBP's Determination That IGF Had Violated EAPA

IGF's case concerns CBP's final affirmative determination of evasion pursuant to EAPA, 19 U.S.C. § 1517(c). *See* TRLED Notice of Determination as to Evasion, P.R. 136, C.R. 81 (Jan. 28, 2022) (TRLED Evasion Determination); Final Administrative Determination, P.R. 148, C.R. 94 (June 6, 2022) (ORR Determination); Final Administrative Supplemental Determination, P.R. 151, C.R. 95 (July 6, 2022) (ORR Supp.).

CBP initiated EAPA 7252 on August 15, 2018, based upon allegations that various importers, including IGF, entered Chinese-origin hardwood plywood, manufactured by Vietnam Finewood Company Limited (Finewood), that had been transshipped through Vietnam and falsely declared of Vietnamese origin to evade the payment of antidumping and countervailing duties. TRLED Evasion Determination at 2. After learning that Finewood was importing into Vietnam Chinese-origin two-ply panels, which are also referred to as "cores," for use in its merchandise, TRLED referred the matter to Commerce for a scope determination, pursuant to 19 U.S.C. § 1517(b)(4) and 19 C.F.R. § 165.16. TRLED Evasion Determination at 5. Specifically, at issue was whether Finewood's merchandise fell within the scope of the orders addressed in *Certain Hardwood Plywood Products from the People's Republic of China*, 83 Fed. Reg. 504 (Dep't of Commerce Jan. 4, 2018) and *Certain Hardwood Plywood Products from the People's*

*Republic of China*, 83 Fed. Reg. 513 (Dep't of Commerce Jan. 4, 2018) (CVD order) (*Plywood Orders*).

In its scope determination, Commerce found that two-ply panels are " veneered panels" that are within the scope of the *Plywood Orders*.  TRLED Evasion Determination at 5; Commerce Antidumping Duty and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China, Enforce and Protect Act (EAPA) Investigation No. 7252: Final Scope Ruling, P.R. 133, C.R. 79 (Jan. 27, 2022) (scope determination).

In its evasion determination, TRLED relied heavily on Commerce's scope determination in finding that Finewood sourced "plywood" from China, and therefore, the Importers' entries from Finewood entered into the customs territory of the United States through evasion.  TRLED Evasion Determination at 7-8.  Similarly, in its *de novo* review of TRLED's determination, ORR also relied heavily on Commerce's scope determination.  ORR Determination at 15-19; ORR Supp. at 4-5.

### III.    <u>Litigation Regarding Commerce's Scope Determination</u>

In February 2022, following Commerce's scope determination, IGF and other parties commenced litigation before this Court to challenge Commerce's determination.  On April 20, 2023, this Court entered an opinion and order in *Vietnam Finewood Co., Ltd.*, 633 F. Supp. 3d 1243 (Ct. Int'l Trade 2023) (*Far East I*), in which it remanded Commerce's scope determination. *Far East I*, 633 F. Supp. 3d at 1265-1266.  In its decision, this Court concluded that Commerce's scope determination was inconsistent with the "unambiguous meaning" of the *Plywood Orders* and remanded the matter to Commerce for further proceedings.  *Id.* at 1256.

 Commerce subsequently issued a remand redetermination in which it reconsidered its scope determination and concluded that hardwood plywood produced by Finewood in Vietnam

using Chinese two-ply panels and subsequently exported to the United States does not fall within

the scope of the *Plywood Orders*. *Far East American, Inc., et al., v. United States*, 654 F. Supp.

3d 1308, 1310 (Ct. Int'l Trade 2023) (*Far East II*). On August 22, 2023, this Court issued its

decision in *Far East II* in which it sustained Commerce's remand redetermination. *Id.* at 1311.

Although IGF was a party to the litigation on the scope determination, it did not seek fees and

costs under EAJA.

## IV. **IGF's Challenge To CBP's EAPA Final Determination**

### A. **IGF's Complaint**

In August 2022, while their challenge to Commerce's scope determination was pending,

IGF and other parties separately challenged CBP's affirmative evasion determination on several

grounds. Specifically, in its complaint IGF alleged that CBP: (1) unlawfully imposed EAPA

interim measures on entries of subject merchandise when CBP allegedly unlawfully initiated an

investigation; (2) did not satisfy the statutory elements for finding evasion; (3) failed to complete

its investigation within the time period allowed by statute; (4) unlawfully applied EAPA interim

measures after the statutory deadline for completing the investigation; and

(5) unlawfully did not release confidential information obtained during CBP's investigation in

violation of IGF's due process rights.

### B. **Proceedings Before This Court**

Shortly after IGF and other parties filed their complaints, the parties jointly requested

that the Court stay the EAPA litigation pending the results of the related litigation on the scope

determination. Joint Motion to Stay Proceedings, Sept. 26, 2022, ECF No. 29 (Joint Motion). In

the Joint Motion, the parties stated that Commerce's scope determination would be "potentially

dispositive" of the EAPA litigation because for a "substantial number of entries" a key factual

issue was whether the merchandise fell within the scope of the *Plywood Orders*. *Id.* at 4-5. The Court, however, denied the Joint Motion. Order, Sept. 27, 2022, ECF No. 30. IGF and the other plaintiffs then filed their motions for judgment on the agency record on January 13, 2023.

In May 2023, we filed a motion renewing our request for a stay as a result of the Court's decision in *Far East I*, or, in the alternative, a motion for an extension of time to file our response to the plaintiffs' motions for judgment on the agency record. Defendant's Renewed Motion to Stay Proceedings, May 12, 2023, ECF No. 48. The plaintiffs filed an opposition to this motion. Plaintiffs' Opposition to Defendant's Renewed Motion to Stay Proceedings, May 24, 2023, ECF No. 52. The Court subsequently granted our request for an extension to file our response brief, but deferred ruling on our request to stay until Commerce issued its remand determination in the scope litigation. Order, May 25, 2023, ECF No. 53. After Commerce issued its remand redetermination in which it concluded that the subject merchandise did not fall within the scope of the *Plywood Orders*, the Court again extended our deadline to file our response brief until the Court's final decision in the scope litigation became final. Order, June 30, 2023, ECF No. 57; *see also Far East American, Inc. v. United States*, 673 F. Supp. 3d 1333, 1337 (Ct. Int'l Trade 2023) (*Far East EAPA I*) (explaining the history of the proceedings in the EAPA case).

After the Court's decision in the scope litigation became final, we filed a motion requesting a voluntary remand. Defendant's Motion for a Voluntary Remand, Nov. 8, 2023, ECF No. 65 (Remand Mot.). In our motion, we predicated our request for a remand on the Court's rulings in *Far East I* and *Far East II*, and the Federal Circuit's decision in *Royal Brush Manufacturing v. United States*, 75 F.4th 1250 (Fed. Cir. 2023), which had addressed CBP's treatment of confidential information. Remand Mot. at 1-2. We explained that a remand would

allow CBP to reconsider whether plaintiffs' merchandise was "covered merchandise" within the meaning of 19 U.S.C. § 1517(a)(5) and would allow CBP to review the record and provide plaintiffs with access to previously-unavailable confidential information.  Remand Mot. at 2.

Although our request was both straightforward and consistent with what was contemplated in the earlier joint motion to stay filed in September 2022, IGF filed a nine-page brief in opposition.  Consolidated Plaintiff {IGF's} Opposition To Defendant United States' Motion For A Voluntary Remand, Nov. 29, 2023, ECF No. 67.  In its opposition, IGF erroneously claimed that a remand was unnecessary because no further administrative proceedings were required.  *Id.*  On December 14, 2023, the Court granted our motion, explaining that "{t}he record . . . indicates that CBP's evasion determination relied on Commerce's affirmative answer to the question whether the scope of the {*Plywood Orders*} covers two-ply panels, . . . but that answer has since been determined to be incorrect."  *Far East EAPA I*, 673 F. Supp. 3d at 1339.   Thus, a remand was required so that CBP could "take account of Commerce's revised covered merchandise determination in the first instance."  *Id.*  The Court also stated that CBP could consider its determination consistent with the requirement to share confidential information in light of *Royal Brush*, but only if Commerce's "negative covered merchandise determination is not determinative based on the record before CBP."  *Id.*

CBP then issued its uncontested remand redetermination, which reversed its finding of evasion.  Remand Results, March 1, 2024, ECF No. 71 (Remand Results).  In its remand redetermination, CBP explained that in finding evasion CBP had relied on the "results of a Covered Merchandise Referral it received from {Commerce} . . . pursuant to 19 U.S.C. § 1517(b)(4)."  Remand Results a 3, 5.  CBP explained that because of Commerce's change in position following the Court's decision in *Far East I*, the merchandise was not subject to an

antidumping or countervailing duty order and, thus, was not "covered merchandise" for purposes of 19 U.S.C. § 1517(a)(5). Remand Results at 5-6. Thus, based primarily on the reversal of Commerce's scope determination, CBP reversed its finding of evasion on remand.

After CBP issued its remand redetermination, the parties filed a joint status report in which the Government requested that the Court enter judgment sustaining CBP's remand redetermination, and the plaintiffs requested that the Court delay entering judgment because they were concerned about separate litigation regarding the liquidation of their entries of subject merchandise. Joint Status Report, Mar. 11, 2024, ECF No. 72; *see also Far East American, Inc. v. United States*, 693 F. Supp. 3d 1378, 1380 (Ct. Int'l Trade 2024) (*Far East EAPA II*) (discussing the parties' disagreement).

Following a status conference, the Court entered an opinion and order sustaining CBP's Remand Redetermination. *Far East EAPA II*, 693 F. Supp. 3d at 1381. In *Far East EAPA II* the Court again recognized that the finality of the Court's prior decisions in *Far East I* and *II* had "prompted the Government's motion for a voluntary remand for CBP to reconsider its evasion determination. *Far East EAPA II*, 693 F. Supp. 3d at 1380. In addition, the Court rejected plaintiffs' request for a stay of the entry of judgment and concluded that it did not need to address the issue of a proper remedy. *Id.* Accordingly, the Court entered judgment sustaining CBP's negative evasion determination. Judgment, April 8, 2024, ECF No. 81. Within 30 days after the Court's judgment became final, IGF filed a timely motion requesting ████████ ] in fees and costs.

## SUMMARY OF THE ARGUMENT

IGF's EAJA application in which it seeks over [████████ ] in fees and expenses for a case in which it filed a single substantive brief should be denied for several reasons.

First, IGF cannot be considered a prevailing party for purposes of EAJA because the Court's entry of judgment sustaining CBP's remand redetermination did not materially alter the legal relationship of the parties. Specifically, CBP reversed its finding of evasion not because of any error that it had made during the EAPA proceedings but because of Commerce's change in its position that the entered merchandise was not subject to the *Plywood Orders*.

Second, even if the Court finds that IGF is a prevailing party, our position was substantially justified. In finding evasion, CBP lawfully relied upon Commerce's scope determination in which it found that the subject merchandise fell within the scope of the *Plywood Orders*.

Third, even if the Court were to conclude that the Government's position was not substantially justified, EAJA's provision governing "special circumstances" would render an award of attorney fees unjust. Special circumstances have been recognized when the Government unsuccessfully advanced novel and credible legal theories in good faith, when the case was one of first impression, or when it involved an unsettled area of the law. Here, an award of attorney fees would be unjust because this case presented a matter of first impression related to the CBP's reliance on a scope ruling that has subsequently been overturned on appeal to this Court. Further, the law regarding the nature extent of CBP's authority under EAPA is largely unsettled.

Finally, even if the Court were to conclude that the Government's position was not substantially justified and that an award of fees was not otherwise unjust, ICG is not entitled to the amount of attorney and paralegal fees that it seeks for the following reasons: (1) IGF is not entitled to collect fees for its proceedings before CBP; (2) IGF failed to establish that it is entitled to its actual fees based on a "special factor" because this case did not require specialized

customs law skills; (3) IGF has not demonstrated an entitlement to its requested rate of paralegal fees under EAJA; (4) IGF impermissibly seeks attorney fees related to its unsuccessful claims and claims that unnecessarily prolonged the litigation; and (5) IGF impermissibly seeks attorney fees for excessive, irrelevant, vague, and duplicative time entries.

## ARGUMENT

### I.    Legal Standard

Congress enacted EAJA "to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights" in actions brought by or against the United States. *Scarborough v. Principi*, 541 U.S. 401, 406 (2004); *see also I.N.S. v. Jean*, 496 U.S. 154, 163 (1990) ("{T}he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions.").

The Court may award EAJA fees when the applicant shows that it is an eligible and prevailing party in a civil action brought by or against the United States, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. §§ 2412(d)(1)(A)-(B); *id.* § 2412(d)(2)(B). A plaintiff bears the burden of alleging that the Government's position was not substantially justified, of demonstrating that it is a "prevailing party" that meets the financial eligibility conditions related to net worth and number of employees, and of filing a timely application containing an itemized account of fees and costs. *Scarborough*, 541 U.S. at 405, 414.

The Government bears the burden of showing that its position was substantially justified. *Id.* at 415. The "position of the United States" is defined in EAJA as "the position taken by the United States in the civil action {and} the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). Thus, the "Government's position includes the prelitigation actions of the relevant administrative agency, as well as the U.S. Department of

Justice's litigation arguments." *Int'l Custom Products, Inc. v. United States*, 843 F.3d 1355, 1358 (Fed. Cir. 2016) (internal quotation omitted).  Although the "position" of the Government involves prelitigation conduct as well as the litigation itself, when determining whether the position of the United States was justified, a court does not separately consider every position the Government has taken, but instead makes one determination for the action as a whole.  *Jean*, 496 U.S. at 159, 161-62.

The Supreme Court has held that a position is "substantially justified" if it is "justified to a degree that could satisfy a reasonable person" and has a "reasonable basis both in law and fact."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see also Patrick v. Shinseki*, 668 F.3d 1325, 1330 (Fed. Cir. 2011) ("The government can establish that its position was substantially justified if it demonstrates that it adopted a reasonable, albeit incorrect, interpretation of a particular statute or regulation.").  Thus, a prevailing party may recover fees in the "very small category of cases" in which "the Government's position will be deemed so unreasonable as to produce an EAJA award."  *Pierce*, 487 U.S. at 574.

Even if the Government's position was not substantially justified, special circumstances may bar granting a prevailing party an EAJA award.  *See* 28 U.S.C. § 2412(d)(1)(A).  The "special circumstances" exception is intended to serve as a "safety valve . . . to {e}nsure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts."  *Devine v. Sutermeister*, 733 F.2d 892, 895-96 (Fed. Cir. 1984) (quoting H.R. Rep. No. 96-1418, at 11, *as reprinted in* 1980 U.S.C.C.A.N 4984, 4990) (cleaned up), *superseded on other grounds by statute as stated in Doty v. United States*, 71 F.3d 384, 385 (Fed. Cir. 1995).

II.    **IGF's EAJA Application Should Be Denied**

A.    **IGF Is Not A Prevailing Party**

In order to obtain a fee award under EAJA, a party must be a "prevailing party."  28

U.S.C. § 2412(d).  IGF bears the "burden of proving {it} is a prevailing party."  *Davis v.*

*Nicholson*, 475 F.3d 1360, 1366 (Fed. Cir. 2007).  In determining whether a party prevailed, the

key questions are whether the party seeking fees had obtained:  (1) an enforceable judgment that,

(2) materially alters the legal relationship of the parties.  *Texas State Teachers Ass'n v. Garland*

*Indep. Sc. Dist.*, 489 U.S. 782, 792-93 (1989); *Buckhannon Board & Care Home, Inc. v. West*

*Virginia Dep't of Health & Human Resources*, 532 U.S. 598 (2001) (rejecting a "catalyst theory"

of relief that a party prevails whenever it files an action that causes the government to change its

position on an issue).  Here, IGF is not a prevailing party because CBP's request for a remand

was not predicated on agency error and, thus, did not materially alter the legal relationship

between the parties.  *Ward v. United States Postal Serv.*, 672 F.3d 1294, 1299 (Fed. Cir. 2012)

("{R}emands not rooted in agency error do not result in prevailing party status.").  CBP

requested a remand to address Commerce's conclusion following the Court's decision in *Far*

*East I* that the merchandise did not fall within the scope of the *Plywood Orders*.  Once CBP

assessed Commerce's position it reversed its finding of evasion, rendering IGF's remaining

claims moot.

EAPA directs CBP to refer any matter for which it cannot determine whether the subject

merchandise is "covered merchandise" to the "administering authority to determine whether the

merchandise is covered merchandise pursuant to the authority of the administering authority…."

19 U.S.C. § 1517(b)(4)(A)(i).  Once a referral is made the "administering authority must then

determine whether the merchandise falls within the scope of the relevant order. *Id.*; *see also* 19

U.S.C. § 1517(b)(4)(B).  Thus, the "administering authority" is responsible for determining whether the merchandise is covered merchandise.  19 U.S.C. § 1517(b)(4)(B).  Under EAPA, the administering authority is the Department of Commerce.  *See Id.* § 1517(a)(1); *see also* 19 U.S.C. § 1677(1).  As reflected in both TRLED's evasion determination and in ORR's *de novo* review of TRLED's determination, CBP relied heavily on Commerce's scope determination to determine whether an essential element of evasion existed.  TRLED Evasion Determination at 8; ORR Determination at 15-19; ORR Supp. at 4-5.  The Court, however, remanded Commerce's scope determination as inconsistent with the scope of the *Plywood Orders*, and, on remand, Commerce ultimately concluded that the merchandise did not fall within the order's scope.

Thus, the remand in this case was not predicated by arguments that IGF made in the EAPA litigation but on plaintiffs' success in a *separate* case, *Far East I*, 633 F. Supp. 3d at 1265-66.  As the Court explained in *Far East EAPA I*, "CBP's evasion determination relied on Commerce's affirmative answer to the question whether the scope of the *AD/CVD Orders* covers two-ply panels."  673 F. Supp. 3d at 1339.  The Court further explained that, once the Court determined Commerce's affirmative answer to be "incorrect," it was "appropriate for CBP to take account of Commerce's revised covered merchandise determination in the first instance." *Id.*; *see also Far East EAPA II*, 693 F. Supp. 3d at 1380 ("The finality of the *Far East Scope* litigation prompted the Government's motion for a voluntary remand for CBP to reconsider its affirmative evasion determination.").  As a result, and over IGF's objection, the Court remanded the matter to CBP for further proceedings.  CBP's remand redetermination made clear that it had reversed its finding of evasion as a result of Commerce's determination that the merchandise did not fall within the scope of the *Plywood Orders*.  Remand Results at 3-6.  Further, the Court's

judgment merely sustained the CBP's determination on remand and did not reflect an adverse decision against CBP.  Judgment, ECF No. 81.

Generally the burden falls on the EAJA applicant to prove that the remand was based on administrative error.  *Crawford v. United* States, 66 F.4th 1339, 1324 (Fed. Cir. 2023).  In other circumstances in which remands are not based on agency error, such as when the remands are for consideration of new arguments or evidence not previously raised, the Federal Circuit has found that the remands do not confer prevailing party status because they do not materially alter the relationship between the parties.  For example, in *Vaughn v. Principi*, 336 F.3d 1351, 1353 (Fed. Cir. 2003), the Federal Circuit held that a remand to the agency to address the impact of a newly-enacted statute on a case did not confer prevailing party status.  *See also Gurley v. Peake*, 528 F.3d 1322, 1327-28 (Fed. Cir. 2008) (remand because the Board of Veterans' Appeals failed to properly consider the merits of all of the veteran's claim at one time failed to confer prevailing party status); *Ward*, 672 F.3d at 1299-1300 (summarizing the Federal Circuit's cases on this point).  As explained above, CBP's request for a remand was not predicated on any error that CBP had made, but rather to address the effect of a judicial decision in a separate case.    Thus, the remand did not materially alter the relationship between the parties.  This is confirmed by the fact that the Court's judgment sustained CBP's determination on remand – a remand that was entered only after the Court granted the Government's motion to remand over IGF's objection.

Accordingly, IGF is not a prevailing party because CBP's remand was not predicated upon agency error, but rather to address a change in Commerce's position that the merchandise fell within the scope of the *Plywood Orders*.

**B.    The Government's Position Was Substantially Justified**

Even if the Court concludes that IGF is a "prevailing party," IGF is not entitled to attorney fees because the Government's position was substantially justified.  As demonstrated below, the Government had a reasonable basis in law and fact for finding evasion under EAPA.

The Supreme Court has explained that "substantially justified" does not mean "'justified to a high degree,' but rather 'justified in substance or in the main'— that is, justified to a degree that could satisfy a reasonable person."  *Pierce*, 487 U.S. at 565; *accord Norris v. S.E.C.*, 695 F.3d 1261, 1265 (Fed. Cir. 2012).  "{A} position can be justified even though it is not correct, and . . . it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact."  *Pierce*, 487 U.S. at 566 n.2.

When determining whether the Government's position is substantially justified, "the court considers whether, among other things: (i) the issue is novel or a matter of first impression, *i.e.*, the matter has not been clearly decided, (ii) the government had a reasonable basis in law and fact for litigating the issue, and (iii) there is a split in applicable authority."  *Keirton USA, Inc. v. United States*, 627 F. Supp.3d 1342, 1346-47 (Ct. Int'l Trade 2023) (citing, among other cases, *Norris*, 695 F.3d at 1265-66 & *DGR Assocs., Inc. v. United States*, 690 F.3d 1335, 1342 (Fed. Cir. 2012)).

**1.    CBP's Position Was Substantially Justified**

CBP's affirmative determination of evasion was substantially justified.

Under EAPA, "{a} determination of evasion requires three elements: (1) entering covered merchandise into the United States; (2) by means of any document or data or information, written or oral statement, or act that is material and false, or any omission that is material; and (3) that results in any applicable cash deposit or other security being reduced or not

applied to the merchandise." *Diamond Tools Tech., LLC v. United States*, 609 F. Supp.3d 1378, 1383 (Ct. Int'l Trade 2022) (citing 19 U.S.C. § 1517(a)(5)(A)); *All One God Faith, Inc. v. United States*, 589 F. Supp.3d 1238, 1241-42 (Ct. Int'l Trade 2022), *appeal docketed*, No. 23-1078 (Fed. Cir. Oct. 25, 2022).

An examination of the merits of this EAPA action demonstrates that, although CBP ultimately reversed its evasion determination, its initial finding had a reasonable basis in law and fact. As discussed in the preceding section, after CBP could not determine whether the merchandise fell within the scope of the *Plywood Orders*, in accordance with 19 U.S.C. § 1517(b)(4), CBP referred the matter to Commerce, and Commerce was the "administering authority" to determine whether the subject merchandise was "covered merchandise" for purposes of EAPA.

Throughout the EAPA proceeding, CBP based its actions on the determination made by Commerce. CBP found evasion during the initial investigation based "on the results of a Covered Merchandise Referral it received from the Department of Commerce." Remand Results at 3; ORR Supp. at 5-6, BC-023860-61. IGF and other parties, however, separately challenged Commerce's interpretation of the scope of the relevant orders, and after the Court's ruling in *Far East I*, Commerce determined, under protest, that the subject merchandise was not subject to the scope of the orders. IGF did not seek attorney fees in the scope litigation. Because Commerce's position changed, thereby impacting whether the merchandise could be said to be "covered merchandise" under EAPA, CBP was obligated to reconsider its determination of evasion. On reconsideration, CBP found no evasion in light of Commerce's scope determination because the merchandise could not be considered "covered" within the meaning of EAPA. Remand Results at 3. Thus, based on the requirements of EAPA relative to "administering authority," CBP's

position was substantially justified because "it reflected a reasonable interpretation of a particular statute" inasmuch as CBP relied on another authority in rendering both its initial determination of evasion and its subsequent redetermination finding no evasion.  *Diamond Tools Technology, LLC v. United States*, 686 F. Supp. 3d 1374, 1381 (Ct. Int'l Trade 2024) (cleaned up).

 With respect to the merchandise that was allegedly not two-ply, which was the subject of much of IGF's briefing before this Court, TRLED explained that it could not identify a "feasible method" on the record to differentiate between the entries.  TRLED Evasion Determination at 8.  Further, in its supplemental decision, ORR explained that given the ample evidence of evasion in the record and Commerce's scope determination, it was not CBP's burden to *disprove* evasion for certain of IGF's entries.  ORR Supp. at 7-8 (emphasis added) (explaining that CBP reviews the record as a whole).  Because CBP found substantial evidence of evasion during the period of investigation and could not otherwise differentiate between the entries, CBP reasonably took steps to "preserve the entries subject to investigation from liquidation without regard to payment of AD/CVD duties."  *Id.* at 7.

 In its merits briefing, IGF also maintained that CBP erred in finding evasion under 19 U.S.C. § 1517(a)(5)(A) without making any findings as to IGF's culpability.  IGF MJAR at 22-27.  CBP's position that EAPA does not require CBP to make findings as to IGF's culpability has been sustained in other decisions issued by this Court.  For example, in *Ikadan System USA, Inc. v. United States*, this Court analyzed the statutory language and concluded that EAPA is a strict liability statute.  639 F. Supp. 3d 1339, 1346-1350 (Ct. Int'l Trade 2023).  The *Ikadan* Court's statutory interpretation of EAPA supports that the Government took a reasonable position when this matter was before CBP.

The remainder of IGF's arguments in its merits briefing before this Court concerned CBP's alleged failure to observe the requirements of due process.  IGF MJAR at 16-17, 33-35. This was primarily based upon the fact that CBP did not impose a protective order during the investigation for access to confidential information.  *Id.* at 33-34.  Although the Federal Circuit recently ruled held that the Government violated due process when it withheld confidential information that was central to its finding of evasion in *Royal Brush Manufacturing, Inc. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023), the Federal Circuit's decision was not issued until July 2023, and the Government had previously prevailed on the issue before this Court.  *See Sierra Club v. Secretary of the Army*, 820 F.2d 513, 519 (1st Cir. 1987) (success in district court provides some evidence that the Government's position was substantially justified); *Porter v. Heckler*, 780 F.2d 920, 922 (11th Cir. 1986) (similar).

Finally, IGF maintained that CBP should have abandoned its investigation because it ultimately found some of the relator's evidence to be unreliable and otherwise failed to "test{}" in order to "verify{} its authenticity."  IGF MJAR at 35-36.  As a result, IGF contends that CBP failed to satisfy the requirements of 19 U.S.C. § 1517(b)(1) which provides that CBP initiate an investigation if the "information provided in the allegation or the referral, as the case may be, reasonably suggests that covered merchandise has been entered into the customs territory of the United States through evasion."  IGF MJAR at 35.  As this Court has recognized in other cases, the statutory language "reasonably suggests" is a "low hurdle."  *American Pacific Plywood & LB Wood Cambodia, Ltd.*, No. 20-3914, 2023 WL 4288346, at *8 n.10 (Ct. Int'l Trade June 22, 2023) (citing *CEK Group, LLC v. United States*, 633 F. Supp. 3d 1369 (Ct. Int'l Trade 2023)). Here, the alleger also submitted other information such as shipment information, Vietnamese customs data, and publicly available import and export data.  TRLED - Notice of Investigation

and Interim Measures (Nov. 20, 2018), C.R. 17 at 3-4.  Further, although CBP ultimately found the alleger's video evidence to be unpersuasive, that it later found the video to be unpersuasive does not mean that CBP erred when it initially found that the relator's evidence reasonably suggested evasion such that the agency initiated an investigation.  *See generally*, *CEK Group*, 633 F. Supp. 3d at 1374 (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968) and discussing the Government's position that the "reasonably suggests" language "weighs in favor of reading the phrase to mean initial findings without the need for substantial evidence").  Again, nothing in the statutory language requires CBP to perform extensive validation prior to initiating an investigation.

      **2.**     **The Government's Litigation Position Was Substantially Justified And IGF Concedes As Much**

The Government's litigation position was also substantially justified because it entailed a reasonable consideration of the law and facts in a case where the law is largely unsettled. Recently, in *Diamond Tools Technology, LLC v. United* States, 686 F. Supp. 3d at 1380-81, this Court rejected a request for fees under EAJA and found the Government's position to be substantially justified because there is relatively little precedent under EAPA and the case presented several matters of first impression.  The Court's analysis in *Diamond Tools* also weighs in favor of finding that IGF is not entitled to damages in this case.

  "The decision on an award of attorney fees is a judgment independent of the result on the merits, and is reached by examination of the government's position and conduct through the EAJA prism, not by redundantly applying whatever substantive rules governed the underlying case."  *Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States*, 837 F.2d 465, 467 (Fed. Cir.), *cert. denied*, 488 U.S. 819 (1988) (cleaned up).  Under the substantially justified standard, the Government's position does not have to be "correct" or even "justified to a high

degree." *Id.* (quoting *Pierce*, 487 U.S. at 565, 566 n.2).  Rather, "substantially justified" means only that the Government's position was "justified in substance or in the main — that is, justified to a degree that could satisfy a reasonable person." *Id.* (quoting *Pierce*, 487 U.S. at 565); *see also Norris*, 695 F.3d at 1265 ("Put another way, substantially justified means there is a dispute over which reasonable minds could differ.") (cleaned up).

As explained in the preceding section, "the government did not advocate for an unsupportable position under the applicable law." *Keirton USA, Inc.*, 627 F. Supp. 3d at 1348. Further, cases such as this one — involving novel issues or where the law is otherwise not settled — are precisely the types of cases in which the Federal Circuit has held that EAJA fees are not warranted.  The Federal Circuit has recognized that "in assessing the justification of the government's position, courts consider the clarity of the governing law, that is, whether judicial decisions on the issue left the status of the law unsettled, and whether the legal issue was novel or difficult." *Norris*, 695 F.3d at 1265 (cleaned up).  Similarly, in *Diamond Tools*, 686 F. Supp. 3d at 1380, the Court found that the Government's position was substantially justified because the case presented issues of first impression.

Here, other than the Federal Circuit's decision in *Royal Brush*, which was issued late in this litigation, there is a lack of binding legal precedent governing the interpretation of the EAPA provision and, in particular, the effect of interrelationship between Commerce's authority to issue scope rulings and CBP's ultimate finding of evasion.  Thus, this is precisely the type of case in which the Government's position has been found to be substantially justified.  *See Norris*, 695 F.3d at 1265 (holding that the Government's position was substantially justified because "the government offered a reasonable legal argument on a somewhat unsettled {and} difficult issue over which reasonable minds could differ") (cleaned up); *Keirton USA, Inc.*, 627 F.

22

Supp.3d at 1347 ("Here, the position of the United States was substantially justified because the issue was a novel issue, of first impression, and the government had a reasonable basis in law and fact to litigate the issue."); *Sumecht NA, Inc. v. United States*, 437 F. Supp. 3d 1316, 1323 (Ct. Int'l Trade 2020) ("The uncertainty in the law during the underlying litigation also supports a conclusion that Defendant's position was substantially justified.") (citing cases).

Indeed, in seeking a fee enhancement under EAJA's special factor, IGF concedes that "{t}he universe of cases before this Court that have addressed EAPA, in the manner addressed by this case is limited." Pl. Br. at 14. Such a concession undermines IGF's claim that the Government's position was not substantially justified. *See Gava v. United States*, 699 F.2d 1367, 1371 (Fed. Cir. 1983) (in holding that "the government had a reasonable basis for litigating the issue before the Court of Claims{,}" observing that, in its brief, plaintiff "twice described the question . . . as 'one of first impression'").

Because this case involved novel issues and the scope of CBP's authority to investigate and find evasion under EAPA is unsettled, it would be punitive to impose attorney fees against the Government. Indeed, awarding attorney fees against the Government under these circumstances could have a chilling effect on agencies' ability to interpret statutes where there is virtually no settled law or novel issues under the laws they administer.

### 3.    IGF's Other Arguments Regarding Alleged "Bad Acts" Lack Merit

IGF also contends, without support, that the Government committed various "bad acts" which "unjustifiably increased IGF's attorneys' fees and costs." Pl. Br. at 9-12. IGF cites absolutely no authority for its position that these alleged "bad acts" entitle it to fees.

As a threshold matter, as this Court has recognized "{t}he presumption that government officials act in good faith is enshrined in our jurisprudence." *Grupo Simec Acerero S.A. de C.V.*

*v. United States*, 615 F. Supp. 3d 1339, 1349 (Ct. Int'l Trade 2023) (quoting *Croman Corp. v.*

*United States*, 724 F.3d 1357, 1364 (Fed. Cir. 2013)).  Thus, the Court must "presume that

government officials 'act conscientiously in the discharge of their duties,' and that presumption

may only be overcome by 'clear and convincing evidence' of bad faith."  *Grupo Simec*, 615 F.

Supp. 3d at 1349-50 (quoting *Croman Corp.*, 724 F.3d at 1364).  Here, IGF offers only

allegations that CBP did not discharge its duties in good faith, but "{b}ad faith requires

evidence, not mere allegation."  *Grupo Simec*, 615 F. Supp. at 1349.  Under this standard, IGF's

allegations are plainly insufficient.

      We have already addressed many of the allegations that IGF contends constitute "bad

acts" in the preceding sections, such as IGF's contentions that CBP erred in its initial reliance on

"video evidence of transshipment," TRLED's inability to distinguish between "Finewood's

finished plywood that incorporated two-ply in its production and Finewood's finished product

that did not use two-ply in its production," CBP's referral of the matter to Commerce, and the

Government's general litigation position in the preceding sections.  Pl. Br. at 10-12

      With respect to the remaining the allegations that IGF alleges constitute "bad acts" such

as CBP's issuance of a final evasion determination, CBP's imposition of interim measures and

CBP's issuance of requests for information are all a part of the statutory enforcement scheme,

these are all acts that fall within CBP's considerable discretion under the statute.  Pl. Br. at 10-

11.  The statute broadly authorizes CBP to "collect such additional information as is necessary to

make the determination through such methods {CBP} considers appropriate."  19 U.S.C.

§ 1517(c)(2).  In addition, to protect the revenue, the statute authorizes CBP to impose interim

measures upon finding a reasonable suspicion of evasion early on in the investigation.  19 U.S.C.

§ 1517(e).  Thus, CBP acted within the confines of its discretion and appropriately exercised its

authority in imposing interim measures and in issuing requests for information.  *See American Pacific Plywood*, 2023 WL 4288346, at *4-15 (rejecting challenges to CBP's imposition of preliminary measures); *see also Phoenix Metal Co., Ltd. v. United States*, No. 23-0048, 2024 WL 2891503, at *8 (Ct. Int'l Trade June 10, 2024), *appeal docketed*, No. 24-2222 (Fed. Cir. Aug. 15, 2024) (denying due process challenge to imposition of interim measures).

Further, IGF cites nothing supporting that the fact that CBP inadvertently liquidated its entries, which required IGF to "protests of the liquidations" that would entitle IGF to fees in this case.  As the Court explained in *Far East EAPA II*, 693 F. Supp. 3d at 1380-81, IGF's challenges to the alleged erroneous liquidation are not the subject to this litigation.  Consequently, CBP's liquidation is not a basis for awarding IGF attorney fees.

### C.    The Special Circumstances Presented By This Case Make An Award Unjust

Even if the Court were to conclude that the Government's position was not substantially justified, a fee award would not be warranted if "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).  As explained below, this case presents special circumstances because it involves issues of first impression and CBP's authority under EAPA is largely an unsettled area of law.

Congress intended for the "special circumstances" provision to be a "safety valve" to "insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts." *Devine v. Sutermeister*, 733 F.2d 892, 895 (Fed. Cir. 1984) (quoting H.R. Rep. No. 96-1418, at 11 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, at 4990).

Special circumstances have been recognized when the Government unsuccessfully advanced novel and credible legal theories in good faith, or when the case was one of first

impression, or when it involved an unsettled area of the law. *See*, *e.g.*, *Keirton USA, Inc.*, 627 F.
Supp.3d at 1346 & n.5 ("Special circumstances include novel and credible legal theories the
government raised in good faith.") (citing *Devine*, 733 F.2d at 895-96; *Am. Air Parcel
Forwarding Co. v. United States*, 697 F. Supp. 505,  507 (Ct. Int'l Trade 1998) (recognizing
special circumstances in a case of first impression).

As discussed above, and as this Court recognized in *Diamond Tools*, this case presents
circumstances in which CBP was exercising its authority in an early investigation and finding of
evasion under EAPA in which there was virtually no precedent to guide its exercise of authority.
It also presents a novel issue in that we are aware of no other case in which CBP has relied upon
a scope determination that was subsequently overturned.  Accordingly, because there is relatively
little caselaw addressing EAPA and the case involved several novel and unsettled issues,
Congress intended for the "safety valve" of the EAJA statute to cover precisely this type of
situation.

## III.    Even If IGF Were Entitled To An EAJA Award, Its Requested Attorney Fees Are Contrary To Law And Otherwise Unreasonable

If the Court were to award attorney fees, IGF's requested award is contrary to law and
unreasonable for the following reasons:  (1) IGF is not entitled to collect fees based upon the
administrative proceeding before CBP; (2) IGF failed to establish that it is entitled to enhanced
EAJA fees based on a special factor; (3) IGF has not proven that it is entitled to the higher rate
that it requests for its paralegal fees; (4) IGF impermissibly seeks compensation for issues for
which it was not successful; and (5) IGF impermissibly seeks attorney fees for excessive,
irrelevant, vague, and duplicative time entries.

**A.    IGF Is Not Entitled To Collect Fees And Costs For Its Proceedings Before CBP**

Also flawed is IGF's claim that it is entitled to recover fees for its administrative proceedings.  Declaration of Kurt Winn, ECF No. 20-1, ¶¶ 16-21.  Specifically, IGF requests approximately [          ] in attorney fees and [          ] in costs that are wholly related to the proceedings before CBP.  IGF, however, cites no authority that would entitle it to fees for its proceedings before CBP.  Pl. Br. at 7-9.  As we explain below, even if IGF is successful in recovering fees for its proceedings before this Court, it is not entitled to fees during the proceedings before CBP.

An EAJA award is limited to fees and expenses incurred in the civil action or in an "adversary adjudication" at the administrative level, as defined in the Administrative Procedure Act (APA), 5 U.S.C. § 504(b)(1)(C).  28 U.S.C. § 2412(d)(3); 5 U.S.C. § 504(b)(1)(C).  To be an "adversary adjudication" under the APA two requirements must be satisfied:  (1) the proceedings must be "under section 554" of the APA, and (2) the government's position must be represented by counsel "or otherwise."  5 U.S.C. § 504(b)(1)(C); *see also Ardestani v. INS*, 502 U.S. 129, 135 (1991) (detailing the requirements); *see also Traveler Trading Co. v. United States*, 713 F. Supp. 409, 413-414 (Ct. Int'l Trade 1989) (holding that proceedings before CBP for classification protests are not compensable under EAJA); *Inner Secrets/Secretly Yours, Inc. v. United States*, 916 F. Supp. 1259, 1264 (Ct. Int'l Trade 1996) (same).  IGF cannot establish either requirement.

In order for an administrative proceeding to qualify as an "administrative adjudication," under the APA the underlying statute itself must require the agency to conduct an "on the record" hearing under APA § 554.  *Ardestani*, 502 U.S. 134-135.  Nothing in the EAPA statute, however, calls for an "on the record" hearing under APA § 554.  19 U.S.C. § 1517.  In fact, IGF

*conceded* this point in its merits briefing before this Court in which it stated "{f}or informal proceedings and adjudications such as EAPA investigations that do not require a formal hearing under the APA, 5 U.S.C. § 555 is applicable."  IGF MJAR at 33.  Turning to the second requirement, here the Government was not "represented by counsel" at the administrative level. 5 U.S.C. § 504(b)(1)(C); *see also In re Perry*, 882 F.2d 534, 540 (1st Cir. 1989) (holding "{t}he bare fact that an agency acting in an adjudicatory capacity rules against a private party, unjustifiably, is insufficient, absent the sovereign's adversary participation, to support a fee award under section 504.").  Thus, IGF is not entitled to recover its fees related to the agency proceedings before CBP.

**B.    IGF Fails To Establish That It Is Entitled To A Special-Factor Enhancement**

IGF contends that it is entitled to its actual attorney fees at an average hourly rate that is well above EAJA's $125 statutory cap based on EAJA's "special factor" enhancement.  Pl. Br. at 14.  In particular, IGF contends that this case requires "specialized customs law skills" because EAPA is a relatively new statute that "required a deep study of EAPA and how that statute intersects with Commerce's administration of the antidumping law as well as 19 U.S.C. § 1592." *Id.*  IGF's arguments fail for several reasons.  Further, because IGF has failed to present any other arguments, supporting an adjustment for another factor, such as a higher cost of living, those arguments are waived.

Under EAJA, "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A)(ii).  The Supreme Court examined the meaning of § 2412(d)(2)(A)'s "special factor" exception in *Pierce*, holding that "the exception for 'limited availability of qualified

attorneys for the proceedings involved' must refer to attorneys 'qualified for the proceedings' in some specialized sense, rather than just in their general legal competence." 487 U.S. at 572. The Supreme Court further explained that the exception "refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question — as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Id.* The Court then provided two examples of the former: "an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Id.* "That the $125 per hour cap appears significantly outdated . . . cannot be a basis for redefining the 'special factor' language in the statute{, and} Congress may address any current inconsistency with the realities of legal practice by raising the statutory cap." *Starry Assocs., Inc. v. United States*, 892 F.3d 1372, 1379 n.2 (Fed. Cir. 2018).

Here, IGF contends only that it is entitled to a higher fee level because it is entitled to an increase based upon a "special factor," its purported specialized expertise in customs law. Pl. Br. at 13-14. ICG's contention that this case requires "specialized knowledge and expertise" in the area of "customs law" is unpersuasive. Pl. Br. at 13-14. This Court has recognized that "cases involving customs law are not automatically worthy of elevated attorneys' fees{.}" *Int'l Custom Prods., Inc. v. United States*, 77 F. Supp.3d 1319, 1333 (Ct. Int'l Trade 2015) (quoting *Shah Bros. v. United States,* 9 F. Supp.3d 1402, 1410 (Ct. Int'l Trade 2014)), *aff'd*, 843 F.3d 1355 (Fed. Cir. 2016). Instead, "a special factor fee enhancement may be appropriate where specialized skills in customs law are both necessary and limited." *Id.*; *see also Jazz Photo Corp. v. United States*, 597 F. Supp.2d 1364, 1369 (Ct. Int'l Trade 2008) ("The court next considers whether specialized customs law skills were required for competent representation in the case.") (citing *Pierce*, 487 U.S. at 572); *Lizarraga Customs Broker v. Bureau of Customs and Border*

*Protection*, 35 CIT 1439, 1460 (2011) ("{T}he grant of a special factor enhancement is conditioned upon the requirement that specialized skill was actually needed for the action before the court.").

IGF, however, has failed to demonstrate that there were a limited number of qualified attorneys available to handle this matter, and has also failed to demonstrate that this litigation required "specialized knowledge and expertise." Pl. Br. at 13-14. The issues presented by this case do not constitute a specialized area of law pursuant to the standards of *Pierce*, and specialized expertise was not required to achieve the resolution of this case. Here, the case primarily concerned CBP's requirements when a referral made pursuant to 19 U.S.C. § 1517 (b)(4) is overturned. This is a straightforward issue of statutory interpretation that does not require specialized expertise. All litigators of general competence should be familiar with the principles of statutory interpretation. Thus, any competent litigator would have been qualified to handle this case. Similarly, other issues raised during the proceedings before CBP concerned the correctness EAPA's definition of "evasion," which is another statutory interpretation issue that does not require specialized expertise and issues of due process that also do not require specialized expertise.

Indeed, other than generally claiming that the case required a "deep study" of the relevant law, IGF has failed to identify any issue that required specialized expertise. Pl. Br. at 14. Further, the expertise that IGF's attorneys have acquired regarding EAPA through practice does not qualify for a special-factor enhancement. *See, e.g.*, *Truckers United for Safety v. Mead*, 329 F.3d 891, 895 (D.C. Cir. 2003) ("stressing that nothing in EAJA or its legislative history indicates that the Congress intended to entitle 'all lawyers practicing administrative law in technical fields' to a fee enhancement, we {have} refused to recognize 'expertise acquired

through practice' as a special factor warranting an enhanced fee"); *F.J. Vollmer Co. v. Magaw*, 102 F.3d 591, 598 (D.C. Cir. 1996) ("If expertise acquired through practice justified higher reimbursement rates, then all lawyers practicing administrative law in technical fields would be entitled to fee enhancements").

In support of its claim for a "special factor" enhancement, IGF relies on *Lizarraga Customs Broker*, and the Court's observation that, "for purposes of EAJA, customs law is a specialized practice area, distinct from general and administrative law." Pl. Br. at 13-14 (quoting 35 CIT at 1460). But the Court's analysis in *Lizarraga Customs Broker* did not end there. The Court also considered whether "specialized customs law skills were required for competent representation in this case{,}" and concluded plaintiff was *not* entitled to such an enhancement. *Lizarraga Customs Broker*, 35 CIT at 1460 (citing cases). The facts of this case require the same result as IGF has identified nothing demonstrating the specialized customs skills were required to present its position.

Moreover, IGF's reliance on the difficulty and novelty of the case — that handling it required "a deep study"— is precisely the type of consideration that the Supreme Court rejected in setting forth the relevant standard. *See Pierce*, 487 U.S. at 573 ("The 'novelty and difficulty of issues,' the 'work and ability of counsel,' and 'the results obtained,' . . . are factors applicable to a broad spectrum of litigation; they are little more than routine reasons why market rates are what they are."). Even *Lizarraga Customs Broker*, the case upon with IGF relies for its special-factor argument, *rejected* the novelty of the issues presented as a basis for application of the special factor, holding that "the novelty and difficulty of the issues, although they were present, did not require the attention of lawyers who specialize in customs law." 35 CIT at 1460. Thus, IGF has failed to establish the basis for a special factor enhancement.

Further, because IGF requested an increase to the $125 statutory cap based *only* on its specialized expertise and not on any other factor such as a cost of living adjustment (COLA), it has waived the right to claim an increase on any other basis.  It is well established that arguments not raised in an opening brief are waived.  *United States v. Ford Motor Co.*, 463 F.3d 1267, 1276 (Fed. Cir. 2006)).  As courts have recognized, although the Court possesses the discretion to award a rate higher than $125 per hour based on a higher cost of living, "{p}laintiffs bear the burden of producing appropriate evidence to support the requested increase."  *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 450 (6th Cir. 2009) (citing *Blum v. Stenson* 465 U.S. 886, 898 (1984); *Oliveira v. United States*, 827 F.2d 735, 742 (Fed. Cir. 1987) (holding denial of cost of living increase was not an abuse of discretion).  Consequently, if the Court concludes that IGF has failed to establish entitlement to fees based upon a special factor and that IGF is entitled to fees, then the Court should award fees at no higher than the $125 per hour rate.

### C.    IGF Has Failed to Establish That It Is Entitled To Its Requested Rate For Paralegal Fees

IGF contends that it is entitled to fees for paralegal services in the amounts of [███] and [███], respectively.  *See* Pl. Br. at 14-15.  IGF is not entitled to these fee amounts.

Although the Supreme Court has held that paralegal fees may be reimbursed at market rates as opposed to cost, *Richlin Security Service Co. v. Chertoff*, 553 U.S. 571, 573, 587-88 (2008), here, other than submitting its bills, IGF has not properly supported a claim for heightened fees.  As with the attorney fees addressed in the preceding section, IGF must do more than merely assert it is entitled to a higher rate of fees.  Here, IGF has failed to present any evidence that would demonstrate a prevailing market rate for paralegal fees and has failed to ask for or justify a cost of living adjustment.  Thus, assuming the Court awards fees, the Court should decline to award IGF fees at a rate above the $125 EAJA hourly rate.

### D.    <u>IGF Impermissibly Seeks Compensation For Litigating Unsuccessful Claims</u>

IGF's itemized statements include fees related to issues for which it was unsuccessful in this litigation.  *See* Pl. Br. Ex. 2.  Under EAPA, IGF is not entitled to fees for advancing claims upon which it did not prevail or for fees for advancing claims that unnecessarily prolonged the litigation.

In determining whether a prevailing party is seeking reasonable attorney fees, the Court's first step is to calculate a "lodestar" by multiplying the number of hours it finds the prevailing party expended on the litigation by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).   The party seeking fees under EAJA bears the burden of submitting evidence supporting the hours worked.  *Id.*  "{T}he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees{,}" and "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained."  *Id.* at 440; *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'") (citations omitted); *accord Hubbard v. United States*, 480 F.3d 1327, 1333 (Fed. Cir. 2007).  In addition, pursuant to 28 U.S.C. § 2412(d)(1)(C), the Court may "reduce the amount {of EAJA fees} to be awarded . . . or deny an award, to the extent the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy."

Where a plaintiff is only partially successful, the Court must engage in a two-part inquiry to calculate the appropriate amount of fees.  First, the Court must determine whether the plaintiff "fail{ed} to prevail on claims that were unrelated to the claims on which he succeeded."

*Hensley*, 461 U.S. at 434. If a plaintiff's successful and unsuccessful claims are unrelated, the hours spent on the unsuccessful claims must be excluded in calculating the fee. *Id.*

Even if the Court concludes that IGF is a prevailing party because CBP reversed IGF's finding of evasion, this was *not* the result of IGF's success on any of its claims in this litigation but was instead the result of the Government's request for a voluntary remand that resulted following Commerce's change to its scope determination. In its complaint, IGF challenged CBP's determination of evasion as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and alleged that CBP's conclusions were not supported by substantial evidence. Compl., ECF No. 2, ¶¶ 84, 89, and 92. IGF also claimed that CBP's decision to initiate an investigation was not legally supported, *id.*, ¶ 97, and that CBP did not adhere to the statutory requirements of EAPA. *See id.*, ¶¶ 98-105. Finally, IGF alleged that its due process rights were violated. *Id.* ¶ 108. Once Commerce's scope determination became final, which confirmed that the merchandise did not fall within the scope of the *Plywood Orders*, we requested a voluntary remand, which the Court granted over IGF's objection. On remand, CBP determined that there was no evasion thereby rendering IGF's initial allegations in its complaint moot such that there was no relief that the Court could provide to IGF.

Although we submit that IGF is not entitled to *any* fees, at a minimum, the Court should reduce any fees awarded based on IGF's lack of success on the merits. As discussed above, CBP reversed its finding of evasion due to Commerce's change in position regarding whether the merchandise fell within the scope of the *Plywood Orders*.

The Court should find also that IGF is not entitled to fees for the time that it spent opposing the Government's motion to stay, motion for a voluntary remand, and the time spent arguing that the Court's judgment should resolve the issue of remedy in IGF's parallel protest

litigation.  This would eliminate most of the charges that IGF has requested between May 12,

2023, the date that we filed our renewed motion to stay, and April 12, 2024, which total

approximately [▮▮▮▮▮].  All of these were areas in which IGF advanced claims that were

ultimately unsuccessful or that otherwise "unduly and unreasonably protracted the final

resolution of the matter in controversy."  28 U.S.C. § 2412(d)(1)(C); *see also Jazz Photo Corp.*,

597 F. Supp.2d at 1371 ("conclud{ing} that the better result in this case is to avoid a result

requiring the government to bear the expense of defending even its reasonable positions") (citing

*Ellis v. United States*, 711 F.2d 1571, 1576 (Fed. Cir. 1983)).

     **E.**     **IGF's Fee Request Is Otherwise Unreasonable**

     In addition, IGF's fee application is unreasonable because it reflects:  (1) an excessive

number of attorney and paralegal hours; (2) irrelevant time entries, and (3) vague and redundant

time entries.

     **1.**     **IGF Seeks Excessive Fees**

     In *Hensley*, the Supreme Court explained that courts should exceed from the fee

calculation "hours that were not 'reasonably expended.'"  461 U.S. at 434 (quoting S. Rep. 94-

1011, at 6 (1976)).  A party seeking fees must exercise at least some billing judgment, and

"exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."

*Hensley*, 461 U.S. at 434; *see also Oklahoma Aerotronics v. United States*, 943 F.2d 1344, 1347

(D.C. Cir. 1991) (disallowing claims for "'excessive, redundant, or otherwise unnecessary'

charges").

     As explained in the preceding section, between May 12, 2023 (the date that we filed our

renewed motion to stay) and April 12, 2024 (the last date for which IGF's billing did not reflect

EAJA related work), IGF seeks approximately [▮▮▮▮▮] in fees.  If the Court declines to

reduce these fees based upon IGF's lack of success on the merits, the fees should be reduced because they were unnecessarily incurred.  Specifically, IGF had no basis for opposing a remand that it had previously requested.  In any event, during that time period, all that IGF filed was a nine-page response to our motion to remand, ECF No. 67.[2]  IGF's charges for work during this period are clearly excessive given its limited output.

Another example of IGF's entries the demonstrate excessive billing are entries for downloading and organizing the documents in the administrative record.  Between September 21-22, 2022, IGF billed approximately 13 hours for downloading and reviewing the documents. In addition to the initial download and review, IGF later billed for over 32 additional hours preparing and compiling documents.  The entries are listed in the table below:

| Date | Description | Hours |
|------|-------------|-------|



---

[2]  IGF also joined in the plaintiffs' joint five-page opposition to the Government's motion to stay, dated May 24, 2023, ECF No. 52.



In total, including the [████████████████████████], IGF billed for approximately [████] hours of time ████████████████████████████ documents, which is excessive and should be reduced.

Finally, IFG's request for ████████████] hours that it claims that it spent preparing its 15-page EAJA fee petition between April 15, 2024 and May 31, 2024 is also excessive and should be reduced. We do not dispute that, assuming the Court finds that IGF is entitled to fees under EAJA, attorney fees incurred in the preparation of the EAJA application are recoverable. *Schuenemeyer v. United States*, 776 F.2d 329, 333 (Fed. Cir. 1985). These fees, however, may be reduced on either a pro rata basis or for excessive hours. *Former Employees of Tyco Electronics, Fiber Optics Div. v. U.S. Dep't of Labor*, 350 F. Supp. 2d 1075, 1096-1097 (Ct. Int'l Trade 2004) (finding time spent working on 25-page EAJA petition to be excessive and reducing fees by one-third); *see also KMS Fusion, Inc. v. United States*, 39 Fed. Cl. 593, 603 (1997) (deducting 40 of the 60 hours spent on an EAJA application because they were excessive and reimbursing the remaining 20 hours at the same 40% level that the court had applied to attorney fees unrelated to the EAJA application); *United Partition Sys., Inc. v. United States*, 95 Fed. Cl. 42, 61 (2010) (reducing plaintiff's requested fees for work on EAJA petition by 25%). Here, IFG's request for fees based on its work on its EAJA brief is excessive by any measure and should be reduced if awarded by the Court.

2.    **IGF Seeks Fees For Irrelevant Time Entries**

ICF's bills also contain charges that appear to be related to its protests to the liquidation of its entries or litigation regarding the scope determination.  Examples of such charges are listed in the table below.  Such fees should be disallowed.[3]



| Date | Description | Hours |
|------|-------------|-------|
|      |             |       |

---

[3]  In this section we address only IGF's request for fees that are related to its litigation before this Court and that post-date the filing of its complaint.



### 3.    IGF Seeks Fees For Vague And Redundant Time Entries

IGF's billing statements also reflect vague and duplicative entries.  For example, an entry

dated █████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████ ] are all some variation on █████████████████████████



██████████████████████████████ or ███████████████████████████

████████████████████████ In addition, an entry dated [████████████████████

███████████████████████████ *Id.* Yet another entry dated [████████████

██████████████████████████████████████████████████

████████████████████ And another entry dated ████████████████████

████████████████████████████████████████████████████

███████  To the extent the Court awards fees, these entries should be disallowed or reduced

because are all duplicative or vague, such that impossible to determine what was reviewed and

whether the allotted time was reasonable. *International Custom Products, Inc. v. United States*,

77 F. Supp. 3d 1319, 1334 (Ct. Int'l Trade 2015) (applying a blanket 33% reduction to entries

that were vague or involved duplicative work).

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny IGF's EAJA

application.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:
JENNIFER L. PETELLE                          /s/ Elizabeth Speck
Attorney                                     ELIZABETH SPECK
U.S. Customs and Border Protection           Senior Trial Counsel
  Office of the Chief Counsel      U.S. Department of Justice
                                             Civil Division
                                             Commercial Litigation Branch
                                             Department of Justice
                                             P.O. Box 480
                                             Ben Franklin Station
                                             Washington D.C. 20044
                                             Tel: (202) 307-0369
                                             Email: elizabeth.speck@usdoj.gov


September 10, 2024                            Attorneys for Defendant