Slip Op. 24-109

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| INTERGLOBAL FOREST LLC,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Before: Mark A. Barnett, Chief Judge<br>Court No. 22-00240 |

## OPINION

[Denying Plaintiff's application for attorney fees pursuant to the Equal Access to Justice Act.]

Dated: October 7, 2024

Thomas H. Cadden, Cadden & Fuller LLP, of Irvine, CA for Plaintiff InterGlobal Forest LLC.

Elizabeth A. Speck, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States.  Also on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Franklin E. White, Jr., Assistant Director.  Of counsel on the brief was Jennifer Petelle, Attorney, Office of the Chief Counsel, U.S. Customs and Border Protection, of Washington, DC.

      Barnett, Chief Judge:  Before the court is an application by Plaintiff InterGlobal Forest LLC ("IGF" or "Plaintiff") for attorney fees.  Confid. Appl. for Fees and Other Expenses Pursuant to the Equal Access to Justice Act ("Form 15"),[1] ECF No. 23; see also Confid. Consol. Pl. [IGF's] Mot. for Att'y Fees and Expenses Pursuant to the Equal Access to Justice Act (EAJA) ("IGF Mem."), ECF No. 20 (accompanying

---

[1] IGF's application for attorney fees was submitted on the U.S. Court of International Trade's Form 15 and is referred to as such herein.

Court No. 22-00240                                                                                                  Page 2

memorandum).² Plaintiff seeks an award for expenses and fees allegedly incurred in defending against U.S. Customs and Border Protection's ("Customs") evasion determination pursuant to the Enforce and Protect Act ("EAPA"), 19 U.S.C. § 1517 (2018). For the following reasons, the court denies IGF's application.

## BACKGROUND

Plaintiff seeks an award of attorney fees associated with litigation challenging Customs' evasion determination related to the antidumping and countervailing duty orders on certain hardwood plywood from the People's Republic of China ("China"). *See Certain Hardwood Plywood Prods. From the People's Republic of China*, 83 Fed. Reg. 504 (Dep't Commerce Jan. 4, 2018) (am. final determination of sales at less than fair value, and antidumping duty order); *Certain Hardwood Plywood Prods. From the People's Republic of China*, 83 Fed. Reg. 513 (Dep't Commerce Jan. 4, 2018) (countervailing duty order) (together "the *Plywood Orders*"). The evasion investigation prompted other agency actions, including a covered merchandise referral to the U.S. Department of Commerce ("Commerce"), which in turn led to separate challenges at the court. The court assumes familiarity with the litigation underlying this application and the related challenges as set out in previous decisions. *See Viet. Finewood Co. v. United States*, 47 CIT __, 633 F. Supp. 3d 1243 (2023) (remanding affirmative scope determination); *Far East Am., Inc. v. United States*, 47 CIT __, 654 F. Supp. 3d 1308

---

² This filing is titled "motion," but in substance it is a memorandum in support of the application. This filing also includes a copy of IGF's Form 15 that was subsequently revised in the now-operative version docketed at ECF No. 23.

(2023) ("*Far East Scope*") (sustaining negative scope remand redetermination *sub nom. Far East Am., Inc.* after the court dismissed Vietnam Finewood Co. as a party to the litigation); *Far East Am., Inc. v. United States*, 47 CIT __, 673 F. Supp. 3d 1333 (2023) ("*Far East EAPA I*") (granting the defendant's motion to remand affirmative evasion determination); *Far East Am., Inc. v. United States*, 48 CIT __, 693 F. Supp. 3d 1378 (2024) ("*Far East EAPA II*") (sustaining negative evasion remand redetermination).  The court recounts the following events relevant to this application for attorney fees.

In 2018, Customs' Trade Remedy Law Enforcement Directorate ("TRLED") initiated an evasion investigation pursuant to EAPA.  *See Far East I*, 673 F. Supp. 3d at 1335–36.  The investigation was based upon an allegation that several importers, including IGF, were evading the *Plywood Orders*.  *See id.* at 1336.  While the investigation was pending and despite interim measures suspending liquidation of the entries in question, Customs liquidated the entries subject to the investigation inclusive of antidumping and countervailing duties.  *See Far East EAPA II*, 693 F. Supp. 3d at 1379–80 (describing liquidation).  IGF (and other importers) protested those liquidations, and Customs suspended the protests.  *See id*.

Meanwhile, Customs was unable to determine whether the merchandise at issue (i.e., that which was shipped from China to Vietnam) was covered merchandise and, pursuant to 19 U.S.C. § 1517(b)(4)(A), submitted a covered merchandise referral to Commerce.  *Far East I*, 673 F. Supp. 3d at 1336.  Commerce issued an affirmative scope determination, finding that the merchandise at issue was covered by the scope of the *Plywood Orders*.  *Id.*  Following that determination, TRLED issued an affirmative

evasion determination. *Id.* Upon administrative review, Customs' Office of Regulations and Rulings ("OR&R") affirmed that determination. *Id.*

Three separate lines of cases followed.[3] In the litigation underlying this motion, importers, including IGF, challenged Customs' evasion determination. *Far East EAPA I*, 673 F. Supp. 3d 1333. In the second line of cases, importers, including IGF, challenged Commerce's scope determination. *Far East Scope*, 654 F. Supp. 3d 1308. Finally, in the third line of cases, importers, including IGF, contested the liquidation of the entries by Customs pursuant to 28 U.S.C. § 1581(i) (2018). *See* Compl., *InterGlobal Forest LLC v. United States*, Consol. Ct. No. 20-00155 (CIT Aug. 14, 2020).

In the challenge to Commerce's scope determination, the court remanded Commerce's affirmative scope determination and, on remand, Commerce reversed its original determination and found that the merchandise in question shipped from China to Vietnam was not within the scope of the *Plywood Orders*. *Far East Scope*, 654 F. Supp. 3d at 1310. The court sustained Commerce's remand determination. *Id.* at 1311. After the scope litigation concluded and after the plaintiffs in the evasion litigation had filed their motions for judgment on the agency record, the United States voluntarily requested, and the court granted, a remand for Customs to reconsider its affirmative finding in light of Commerce's negative scope determination. *Far East EAPA I*, 673

---

[3] A fourth case (not involving IGF) sought to rely on the court's residual jurisdiction to challenge Customs' "scope referral to Commerce; Commerce's alleged delay in acting on the referral; Customs' imposition of interim measures; and Customs' alleged failure to complete the investigation within the statutory timeframe." *Viet. Finewood Co. v. United States*, 44 CIT __, __, 466 F. Supp. 3d 1273, 1280 (2020). The court dismissed that case for lack of jurisdiction. *Id.* at 1287.

F. Supp. 3d at 1339.  On remand, Customs reached a negative evasion determination, and the court sustained that determination.  *Far East EAPA II*, 693 F. Supp. 3d at 1380–81.  Separately, relevant to the litigation challenging Customs' liquidation of the entries subject to the evasion proceeding, Customs granted the suspended protests, and some plaintiffs dismissed their cases.  *See*, Order, *InterGlobal Forest LLC v. United States*, Consol. Ct. No. 20-00155 (CIT Aug. 26, 2024), ECF No. 37.  The court dismissed IGF's case as moot after IGF's protests were granted, the bills for antidumping and countervailing duties were canceled, and IGF failed to respond to the court's notice affording IGF the opportunity to provide a legal basis for continuing the suit.  *See id.*; Order, *InterGlobal Forest LLC v. United States*, Consol. Ct. No. 20-00155 (CIT Sept. 4, 2024), ECF No. 38.

After the court entered judgment in the evasion litigation, IGF filed this application for attorney fees.  Form 15; *see also* IGF Mem.  Plaintiff also requests the application of a special factor in determining the award of attorney fees.  IGF Mem. at 14; *see also* 28 U.S.C. § 2412(d)(2)(A).  Defendant United States ("the Government" or "Defendant") argues that Plaintiff is not entitled to an award of attorney fees because IGF was not the prevailing party in the litigation and the Government's position was substantially justified.  Confid. Def.'s Resp. to Pl.'s Appl. For Att'y Fees Under the Equal Access to Justice Act ("Gov't Resp.") at 14–26, ECF No. 28.  The Government further argues that even if IGF is entitled to an award, the requested amount is contrary to law and otherwise unreasonable.  *Id.* at 26–42.

Court No. 22-00240                                                                                           Page 6

## JURISDICTION

The court has jurisdiction over the underlying case pursuant to section 517(g)(1) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1517(g)(1), and 28 U.S.C. § 1581(c). After issuing a judgment, the court retains jurisdiction to adjudicate a party's timely application for fees and expenses. 28 U.S.C. § 2412(d).[4]

## DISCUSSION

Under the Equal Access to Justice Act ("EAJA"), if timely requested, an eligible, prevailing party in an action against the United States may recover attorney fees if the government fails to show that its position "was substantially justified." 28 U.S.C. § 2412(d)(1)(A). "[A]ttorney fees shall not be awarded in excess of $125 per hour," except under certain circumstances. *Id.* § 2412(d)(2)(A). The court addresses each element in turn and concludes that, in this litigation challenging Customs' evasion determination, IGF was not the prevailing party and the Government's position was substantially justified.

**I.   Timely Filing**

As a threshold matter, IGF has timely filed this application in connection with the litigation challenging Customs' evasion determination. The applicant must file an application within 30 days of the final judgment. 28 U.S.C. § 2412(d)(1)(B); USCIT Rule 54.1(a). The court issued its judgment in this case on April 8, 2024. J. (Apr. 8, 2024), ECF No. 19. The judgment became final on June 7, 2024, after the deadline for appeal

---

[4] Changes made in 2019 to this section of the statute are not material to this decision.

expired without appeal.  *See* USCIT Rule 54.1(a) (referencing 28 U.S.C. § 2412(d)(2)(G)).  This application was timely filed on July 8, 2024.  *See* 28 U.S.C. § 2412(d)(1)(B); USCIT Rule 54.1(a); USCIT Rule 6(a)(1)(C) (providing for timely filing on a non-holiday Monday when the deadline ends on a Sunday).

## II. Eligible Party

IGF is an eligible "party" within the meaning of EAJA.  With certain exceptions not relevant here, a "party" for the purpose of this statute includes "any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed."  28 U.S.C. § 2412(d)(2)(B).  IGF had a net worth of less than $7,000,000 and fewer than 500 employees when the case was filed on August 17, 2022.  Confid. Decl. of Kurt Winn in Supp. of Consol. Pl. [IGF's] Appl. for Att'y Fees and Expenses Pursuant to the [EAJA] (July 8, 2024) ¶ 13 & Ex. 1, ECF No. 20-1.  The Government does not dispute that IGF is an eligible party.

## III. Prevailing Party

The first contested element is whether IGF is a prevailing party.  Whether a party is a prevailing party is a question of law.  *Former Emps. of Motorola Ceramic Prods. v. United States*, 336 F.3d 1360, 1363 (Fed. Cir. 2003).  A party seeking an EAJA award bears the burden of proving that it is the prevailing party.  *Thompson v. Shinseki*, 682 F.3d 1377, 1381 (Fed. Cir. 2012).  IGF avers that it is the prevailing party because Customs' reversal of its affirmative evasion determination was a success for IGF on a

significant issue. IGF Mem. at 5–6. The Government responds that IGF is not the prevailing party because Customs' remand request was not based on Customs' error and therefore did not "materially alter the legal relationship between the parties." Gov't Resp. at 14.

The "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship between the parties" and that "change must be marked by 'judicial imprimatur.'" *CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 421–22 (2016) (first quoting *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989), then quoting *Buckhannon Bd & Care Home, Inc. v. W. Va. Dep't of Health Res.*, 532 U.S. 598, 605 (2001)).[5] "[E]nforceable judgments on the merits and court-ordered consent decrees create" this alteration. *Buckhannon*, 532 U.S. at 604. However, litigation resulting in "a nonjudicial alteration of actual circumstances" or "the sought-after destination without . . . any judicial relief" does not confer prevailing party status. *Id.* at 606 (quotations omitted).[6]

---

[5] *CRST* addresses the "prevailing party" issue for the fee-shifting provision of Title VII of the Civil Rights Act of 1964. 578 U.S. at 421. *Texas State Teachers Ass'n* addresses the "prevailing party" issue for the award of attorney fees pursuant to 42 U.S.C. § 1988. 489 U.S. at 784. *Buckhannon* addresses the "prevailing party" issue for a request for attorney fees under the Fair Housing Act Amendments. 532 U.S. at 601. These decisions nevertheless are applicable in the EAJA context. *See, e.g.*, *Winters v. Wilkie*, 898 F.3d 1377, 1380–82 (Fed. Cir. 2018) (relying on all three cases in deciding an EAJA application).

[6] By contrast, "a favorable ruling on the merits is not a necessary predicate to find that a *defendant* has prevailed." *CRST*, 578 U.S. at 421 (emphasis added). *But see Buckhannon*, 532 U.S. at 603 (noting a prevailing party must receive "some relief on the merits"); *Tex. State Tchrs. Ass'n*, 489 U.S. at 791–92 (1989) (same). The Court's use of "defendant" appears significant. The Court explained that "[p]laintiffs and defendants

Court No. 22-00240                                                                                                                                            Page 9

      In the context of administrative agency remands, the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has emphasized the role of agency error in determining prevailing-party status. "A remand to an administrative agency for further proceedings can provide the requisite relief required to confer prevailing-party status" but "only if the remand is predicated—either explicitly or implicitly—on agency error." *Robinson v. O'Rourke*, 891 F.3d 976, 980–81 (Fed. Cir. 2018) (collecting cases). When a remand is ordered "without a judicial finding of administrative error or a concession of error by the agency, the default rule is that the remand is not based on administrative error for EAJA purposes." *Thompson*, 682 F.3d at 1381 (quoting *Davis v. Nicholson*, 475 F.3d 1360, 1366 (Fed. Cir. 2007)). For example, remands "to consider the effects of legislation enacted while the case was on appeal" or "for consideration of new evidence discovered for the first time while the case was on appeal" do not necessarily involve agency error and therefore generally do not confer prevailing-party status. *Former Emps. of Motorola Ceramic Prods.*, 336 F.3d at 1366 (citing *Vaughn v. Principi*, 336 F.3d 1351, 1355 (Fed. Cir. 2003)).

      After *CRST* reaffirmed the importance of the change in the legal relationship of the parties, the Federal Circuit declined to "reconsider or clarify [its] precedent requiring administrative error in cases of remand for further agency proceedings." *Robinson*, 891

---

come to court with different objectives." *CRST*, 578 U.S. at 431. "A defendant seeks to *prevent* [a material alteration in the legal relationship between parties] to the extent it is in the plaintiff's favor." *Id.* (emphasis added). "The defendant has . . . fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision." *Id.* Thus, a "defendant may prevail even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason." *Id.*

Court No. 22-00240 Page 10

F.3d at 982; *see also id.* at 982 n.3 (noting its precedent "likely is not inconsistent with *CRST*"). In *Robinson*, the Federal Circuit considered both whether the remand was based on administrative error and whether the remand materially altered the legal relationship between parties, concluding that under either standard, the applicant for attorney fees was not the prevailing party. *Id.* at 982–86; *cf. Winters*, 898 F.3d at 1381–82, 1384 (considering both "whether the remand was predicated either explicitly or implicitly on agency error" and whether there was "a material alteration in the legal relationship between parties"). Having reviewed the case law from both the Supreme Court of the United States and the Federal Circuit, the court does not find inconsistency in the legal standard for the purpose of IGF's application.

The court concludes that IGF was not the prevailing party in this challenge to Customs' evasion determination because neither court order (the order remanding Customs' determination and the judgment sustaining the remand determination) was based on a judicial finding of error by Customs. This conclusion requires the court to consider, in the EAJA context, the effect of a Commerce scope determination on a Customs evasion determination. In this litigation, at no point did the court make a finding of error on the part of Customs in its evasion determinations. Rather, the court concluded that a remand was appropriate upon request from Defendant because of a change in Commerce's scope determination—a change resulting from separate litigation challenging a separate determination by a separate agency and from which

Court No. 22-00240                                                                                                    Page 11

IGF did not seek an award of attorney fees.[7]  Although Commerce's scope determination was relevant to Customs' evasion determination, the two administrative determinations, and the separate lines of cases challenging each, are distinct. "Congress was expressly aware of the possibility of parallel litigation stemming from an EAPA investigation because the statute . . . recognizes that Commerce determinations responsive to [Customs] covered merchandise referrals may give rise to separate litigations pursuant to 19 U.S.C. § 1516a(a)(2)."  *Royal Brush Mfg., Inc. v. United States*, 47 CIT __, __, 675 F. Supp. 1282, 1293 (2023).  Defendant's request for a remand to take account of another agency's redetermination here, like remands based on changes in legislation or the discovery of new evidence, was based on changes outside the relevant agency's control and does not confer prevailing-party status for the purpose of EAJA.  *See Former Emps. of Motorola Ceramic Prods*., 336 F.3d at 1366.

Put another way, any change in legal relationship occurred between *Commerce* and IGF when the court assessed Commerce's scope determination, found error, and ordered reconsideration.  While Customs ultimately changed its evasion determination subsequent to and based upon Commerce's change, the order granting the remand to Customs did not form the basis for the change, only the opportunity.  Customs' finding of no evasion in the remand determination did not stem from a court evaluation of that position in this litigation, but rather distinct litigation involving a separate administrative

---

[7] Because IGF did not file an EAJA application in the scope litigation and because the evasion litigation and scope litigation are separate, the court does not consider whether IGF would have qualified as a prevailing party in the scope litigation.

agency.  Without an opinion that Customs' evasion determination lacked merit in this litigation, Customs' change in position lacks the necessary judicial *imprimatur* for IGF to qualify as a prevailing party.[8]  A contrary outcome would mean that any time Customs reverses an evasion determination based solely on Commerce's reversal of any covered merchandise determination and without any judicial consideration of the merits *relative to Customs'* findings, a plaintiff could be considered to be the prevailing party and would potentially be entitled to attorney fees and costs *from Customs*.  *See* 28 U.S.C. § 2412(d)(4) (explaining that the agency involved in the litigation is responsible for any award of fees and other expenses).  As discussed further below in the context of substantial justification, such an outcome would be contrary to the purpose of fee shifting pursuant to the EAJA, which holds agencies accountable for their own litigation decisions.  Accordingly, the court concludes that, in this litigation, IGF was not the prevailing party for the purpose of an EAJA award.

## IV.  Substantial Justification

The second contested element is whether the Government's position was substantially justified.  Regardless of whether IGF is the prevailing party, an award of attorney fees is not warranted because the Government's position was substantially justified.  Whether the government's position is substantially justified is a matter of

---

[8] This case is distinct from *Robinson* and *Winters* in which the attorney fees were sought based solely on a remand (not an additional judgment after remand, as followed here).  In both those cases, unlike this case, the Veterans Court did not retain jurisdiction.  *Robinson*, 891 F.3d at 978; *Winters*, 898 F.3d at 1379.  Nonetheless, the court concludes that the court's remand did not provide the *judicial imprimatur* to qualify IGF as the prevailing party.

judicial discretion. *Pierce v. Underwood*, 487 U.S. 552, 558–59 (1988). While a plaintiff must allege that the government's position was not substantially justified, the government bears the burden of showing that its position was substantially justified. *Scarborough v. Principi*, 541 U.S. 401, 414–15 (2004).

      IGF alleges that the Government cannot establish that its position was substantially justified because the Government failed to offer "substantial credible evidence" in support of its determination. IGF Mem. at 8. IGF further points to "governmental bad acts," *id.* at 10, to establish that the Government's position was not substantially justified, *id.* at 10–12. IGF avers that: TRLED relied on weak evidence to initiate the investigation; TRLED failed to provide constitutional notice for the investigation; Customs liquidated entries despite a pending scope referral; TRLED failed to distinguish between products that did or did not incorporate two-ply wood as an input; TRLED issued multiple rounds of requests for information; Customs failed to issue its determination by September 16, 2019, and instead submitted a covered merchandise referral; Commerce "unreasonably and unjustifiably found" the merchandise was not substantially transformed as part of the covered merchandise referral; TRLED issued an affirmative evasion determination against IGF; and OR&R affirmed the evasion determination. *Id.*

      The Government responds that its position was substantially justified. Gov't Resp. at 17–26. First, the Government argues that Customs' initial finding of evasion was reasonable based on Commerce's affirmative scope determination in the referral from Customs. *Id.* at 18. The Government further contends that the lack of precedent

and the novelty of EAPA litigation substantially justify the Government's positions in the EAPA litigation. *Id.* at 21–23. Finally, the Government argues that IGF's recitation of "bad acts" is meritless because no authority establishes that any purported bad acts entitle a party to an award of attorney fees. *Id.* at 23–25.[9]

A position is substantially justified if it is "justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565. That the agency's position was incorrect is not sufficient to establish that their position was not substantially justified. *Patrick v. Shinseki*, 668 F.3d 1325, 1330 (Fed. Cir. 2011) ("The government can establish that its position was substantially justified if it demonstrates that it adopted a reasonable, albeit incorrect, interpretation of a particular statute or regulation."). More specifically, a conclusion that the agency's decision was unsupported by substantial evidence does not establish that the agency's position was not substantially justified. *Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States*, 837 F.2d 465, 467 (Fed. Cir. 1988). Rather, in assessing substantial justification, the court considers "the clarity of the governing law," whether the law is unsettled, and "whether the legal issue was novel or difficult." *Norris v. SEC*, 695 F.3d 1261, 1265 (Fed. Cir. 2012). The "'position of the United States' means, in addition to the position taken by the United States in the civil

---

[9] In the alternative, the Government argues that the special circumstances of this case make any attorney fee award unjust. Gov't Resp. at 25–26 (citing 28 U.S.C. § 2412(d)(1)(A)). The Government cites to the novelty of the circumstances of this case, noting that "there was virtually no precedent" regarding how Customs should exercise its authority in an evasion case. *Id.* at 26.

Court No. 22-00240                                                                                                               Page 15

action, the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D).

The court finds that the Government's position, which includes both Customs' evasion determination and the ensuing litigation in support of that determination, was substantially justified based on the novel nature of EAPA investigations as well as Customs' justifiable reliance on an administrative determination made by another agency. The unfair trade laws often involve related determinations by more than one agency, whether it be Commerce, the U.S. International Trade Commission, or Customs. EAPA investigations have added yet another legal remedy which may depend upon distinct determinations by Customs and Commerce. 19 U.S.C. § 1517 (detailing Customs' role in evasion investigations and Commerce's role determining whether merchandise is covered merchandise); *see also Sunpreme Inc. v. United States*, 892 F.3d 1186, 1188–89 (Fed. Cir. 2018) (describing generally the different roles of Customs and Commerce). The Tariff Act, as amended, carves out a role for Commerce by directing that if Customs receives an allegation of evasion and is unable to determine whether the merchandise is covered, the agency "shall" refer the matter to Commerce to determine if the merchandise is covered by the antidumping or countervailing duty order. 19 U.S.C. § 1517(b)(4)(A). Indeed, the statute further recognizes that the distinct determinations of the two agencies lead to separate court challenges. *See Royal Brush*, 675 F. Supp. 3d at 1293 (citing 19 U.S.C. § 1517(b)(4)(D)). Nothing in the statute suggests that Customs was empowered to ignore or second-guess Commerce's scope determination. Commerce's scope

determination was a necessary part of Customs' evasion determination, evidenced by the fact that Customs reversed its evasion determination when Commerce reversed its scope determination. To conclude that Customs' position on the issue of evasion was not substantially justified would hold Customs responsible for Commerce's ultimately erroneous decision. *See* 28 U.S.C. § 2412(d)(4) (explaining that the agency involved in the litigation is responsible for any award of fees and other expenses).

IGF appears to suggest, in some of its proposed "bad acts," that the lack of evasion was so obvious that Customs never should have initiated the investigation, let alone made the covered merchandise referral to Commerce. IGF Mem. at 10–12. While IGF advances these arguments in an effort to claim that Customs' position was not substantially justified, these particular arguments only reinforce the court's conclusion that IGF is not the prevailing party because these claims were not fully briefed to, or adjudicated by, the court. An application for attorney fees is not an opportunity to litigate those claims now. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation.").

Other purported "bad acts" IGF identified likewise fail to suggest the Government's position lacked substantial justification.[10] Certain of the purported "bad

---

[10] As the Government points out, IGF offers no explanation for how "governmental bad acts" relate to whether a position is substantially justified. IGF simply avers that these actions "significantly increased" its attorney fees. IGF Mem. at 10. But whether attorney fees were affected does not speak to whether a position is reasonable such that it is also substantially justified. To the extent IGF attempts to use these "bad acts" as support for its request for a special factor to increase any award of attorney fees, that argument also is unpersuasive. *See Starry Assocs. v. United States*, 892 F.3d 1372,

Court No. 22-00240 Page 17

acts" were not performed by Customs, but by Commerce, and are outside the parameters of this evasion litigation. IGF points to Commerce's determination that two-ply panels were covered by the scope, but that Commerce determination was challenged in a separate litigation in which IGF did not seek attorney fees. Similarly, IGF points to liquidation instructions and liquidation as "bad acts," but, again, the liquidation of entries was the subject of other court action, which was ultimately dismissed. Each of these alleged "bad acts" were the subject of litigation separate from this evasion litigation. Still other purported "bad acts" are unpersuasive as evidence of a lack of substantial justification for Customs' position. Agency actions such as issuing requests for information (even if numerous), referring a covered merchandise inquiry to Commerce, and reviewing the determination *de novo* may cause a participant to incur additional costs. Such additional costs, however, do not establish a lack of substantial justification because they do not speak to the reasonableness of the position taken by the agency. *See Pierce*, 487 U.S. at 565 (describing the standard).

---

1377 (Fed. Cir. 2018) ("[E]gregious agency misconduct is not a 'special factor' under [section] 2412(d)(2)(A).").

## CONCLUSION

For the reasons stated above, the court **DENIES** IGF's application for attorney fees.[11]

/s/　　Mark A. Barnett　　
Mark A. Barnett, Chief Judge

Dated: October 7, 2024　　
　　　　New York, New York

---

[11] Because the court denies IGF's application, it need not consider arguments about the application of a special factor to determine the amount of the award or the reasonableness of the award sought.